[Civ. No. 3604. Third Appellate District.—March 13, 1929.]

G. R. WINSLOW, Appellant, v. RALPH BULL et al., as Members of the State Highway Commission, etc., Respondents.

Inman & West and Theodore W. Chester for Appellant.

Harry A. Encell for Respondents.

FINCH, P. J.—The appellant applied to the trial court for a writ of mandate to compel his reinstatement as general maintenance engineer of the State Highway Commission and the payment of his salary as such engineer. Judgment was entered in favor of the respondents and this appeal is from the judgment.

At the time this proceeding was commenced and for several years prior thereto, R. M. Morton was state highway engineer and, as such, the executive officer of the State High-

way Commission. By a stipulation filed herein during the pendency of this appeal, but which was not filed in the trial court, it appears:

"That the existing classification of engineering service was adopted by the civil service commission on February 21, 1921, and included, among others, two grades of highway engineering positions, namely, highway engineer, grade 6, with a salary range of $360 to $420 a month, and associate highway engineer, grade 5, with a salary range of $285 to $350 a month; further that under the terms of this classification the position of general maintenance engineer with the California Highway Commission was classified in the subclass of highway engineer, grade 6, and the position of division maintenance engineer was classified in the subclass of associate highway engineer, grade 5."

At all times since July 1, 1919, the appellant has been classified as highway engineer, grade 6. His employment commenced in January, 1912, and from August 18, 1924, to the time of the attempted termination of his employment he was general maintenance engineer of the State Highway Commission at a monthly salary of $400.

"The duties of maintenance engineer are state wide. So far as maintenance is concerned he has to do with all the roads of the state that are under the jurisdiction of the State Highway Commission. This involves the allotting of funds to the various divisions, ten in number; the passing upon recommendations of the division engineers for maintenance work; advising the division engineers as to the methods to the end that there should be uniformity in maintenance work throughout the state; the passing upon the methods of expenditures by the division engineers pertaining to maintenance, and in general the doing of all things necessary or proper in carrying out maintenance work over the entire state."

In the latter part of June, 1926, Morton found fault with petitioner's work and suggested that he tender his resignation. Petitioner refused to resign, and July 3, 1926, Morton wrote him as follows: "Inasmuch as, after a trial extending over nearly two years, your conduct of the maintenance department has not developed the possibilities and the efficiency which I believe it reasonably should have, I hereby

request your resignation as maintenance engineer. The form of resignation is enclosed herewith."

The petitioner still refused to resign, and on the 24th of the same month Morton wrote him: "You are hereby advised that effective July 31, 1926, your connection with this department as maintenance engineer is terminated in accordance with rule 16, section 1, rules and regulations of the Civil Service Commission."

On the same day Morton wrote the Civil Service Commission as follows: "You are hereby notified that layoff has been made, effective July 31st, of G. R. Winslow, maintenance engineer. . . . A reduction in force, as well as a direct saving, will be effected by the layoff. . . . We expect to transfer Mr. Thos. H. Dennis, division maintenance engineer of division III, Sacramento, to the headquarters maintenance department as acting maintenance engineer. Mr. Dennis holds civil service standing as civil engineer, grade V. His duties as division maintenance engineer will be performed by present employees of the division. We are recommending an increase in salary for Mr. Dennis on account of increased responsibility as acting maintenance engineer from his present salary of $300 per month to $350 per month, effective August 1st, 1926."

On the 28th of the same month Morton wrote the division maintenance engineers as follows: "You are hereby advised that on the first of August, Thomas H. Dennis will assume charge of the headquarters maintenance department as acting maintenance engineer. Mr. Dennis will act in the position formerly held by G. R. Winslow, laid off."

Morton testified: "In the summer of 1926 it was found that we could effect a reduction in the number of employees and effect economy in our salary outgo by making a consolidation which involved the laying off of Mr. Winslow. I finally decided to lay off Mr. Winslow and assigned his duties to Mr. T. H. Dennis, who formerly was maintenance engineer of division 3 in Sacramento. The work in division 3 was distributed between the division engineers, the assistant in the division and Mr. Dennis; this resulted in the saving of $350 per month. . . . I did not discharge Winslow. I laid him off. . . . When I asked for his resignation on July 3, 1926, it was because he had not developed the possibility and the efficiency of the department. . . . Mr. Dennis had

occupied the position which he held for two or three years prior to July, 1926. He had charge of the maintenance work for about 900 miles in division 3. . . . It did not become lessened. The work that Mr. Dennis was performing during that time was necessary work, and the money that was being paid for it was not wasted. The department from which he came continued to function and other men in that department absorbed his duties. . . . The work that was being performed by Mr. Winslow on July 24, 1926, and prior to that time was necessary work and that work continued to be necessary. The work that was being performed by Mr. Winslow in that department is now being performed by Mr. Dennis. . . . We are paying Mr. Dennis under grade 5. That is the grade which he occupied in division 3. The state is divided into ten districts. Each district has a division engineer. Each division engineer has an assistant, who is charged with the maintenance of highways within his district. He is called the division maintenance engineer. Mr. T. H. Dennis filled this position in division 3. His work consists of directing the superintendents, foremen and laborers engaged in the repair and upkeep of the highways. He instructs them as to materials, equipment and methods to be used; in fact exercises general supervision as to details. Most of his work is in the field.''

The Civil Service Commission approved the recommended increase in the salary of Dennis as acting maintenance engineer. Section 1 of rule 16 of the Civil Service Commission, referred to in Morton's letter of July 24, 1926, provides: ''Whenever any permanent civil service position is abolished or made unnecessary, or whenever the number of positions of a certain character is reduced through lack of work or lack of funds, the employee or employees legally holding such positions shall be deemed to be laid off without pay. . . . Such employees shall be laid off by the appointing power according to their relative efficiency and the least efficient shall be laid off first.''

■ From the foregoing statement it appears that the appellant held the position of general maintenance engineer, ''classified in the subclass of highway engineer, grade 6''; that Dennis held the position of division maintenance engineer, ''classified in the subclass of associate highway engineer, grade 5''; that these positions are not in the same

class; that appellant's position was not "abolished or made unnecessary," nor was the number of positions of that character reduced through lack of work or lack of funds, there being but the one such position and the work thereof being performed by appellant's successor after the attempted discharge. From the statement in the stipulation referred to, that "the existing classification of the engineering service was adopted by the civil service commission on February 21, 1921," it appears that there was no reclassification of the "highway engineering positions." ■ The acquiescence of the Civil Service Commission in the action of the highway commission did not constitute a reclassification of such positions. Until changed in the manner provided by law, the classification made by the Civil Service Commission is as binding on that commission as on others. (46 C. J. 991.) Any other interpretation of the Civil Service Act (Stats. 1913, p. 1035), would defeat its purpose and fix the tenure of civil service employees at the will of the Civil Service Commission and the employing officer or agency, rather than "during good behavior" as the act provides. At the time of the transactions in question, section 5 of the act provided: "The commission shall . . . classify positions to be held under state authority in accordance with the provisions of this act and in accordance with the duties attached to such positions. The commission shall grade all positions within each class with respect to salaries. . . . Such classes and grades may from time to time be amended, added to, consolidated or abolished by the commission, but persons holding positions under the original classification or grade shall not be affected thereby." (Stats. 1923, p. 659.)

Section 13 provides: "The commission may authorize the transfer of any person legally holding a position to a similar position in the same class or grade. . . . No promotion, transfer or reinstatement shall be made from a position in one class to a position in another class." (Stats. 1919, p. 1346.)

Section 14 provides that "the tenure of everyone holding a position under the provisions of this act shall be during good behavior," but that any such person may be removed for any of the causes therein enumerated, after a trial upon written charges. It is not contended that the appellant was removed in the manner provided in that section, but, with-

out a trial, he was "laid off without pay" and another engineer in a position of a lower class and grade was, contrary to the express provisions of section 13 of the act, transferred to the position of general maintenance engineer to do substantially the same necessary work that appellant had been doing.

Morton testified: "Q. Was there any difference in the character of work that was performed by Mr. Winslow and that performed by the staff of engineers under the direction of Mr. Dennis? A. Yes. Q. Just explain what that difference consists of. A. Mr. Dennis' connection with the maintenance work has always been what you might call somewhat closer, somewhat more practical than Mr. Winslow. In other words, with the placing of Mr. Dennis in the position of maintenance engineer in charge of all the maintenance of the state, the duties of the department became thus in closer sympathy, actually expansive—the various allotments, the development of the department, of the functioning of the maintenance department became possible on account of his familiarity with those particular men. The duties expanded also in taking advantage of the various men in the road service which we had under maintenance, and the preparation of a program for expeditious protection of the gravel surface for the oil work, which required an exclusive and proper detailed knowledge of the character of each one of those roads."

Respondent contends that this evidence shows that the character of the duties performed by Dennis after his transfer were different from those performed by Winslow. Such evidence relates, however, to the quality of the work and the relative efficiency of the two men rather than to any difference in the character of the work. It is true that Morton further testified that "the work in division 3 was distributed between the division engineers, the assistant in the division and Mr. Dennis," implying that Dennis, after assuming the duties of acting general maintenance engineer, continued to do some of the work of his former position. Morton later testified that the department from which Dennis "came continued to function and other men in that department absorbed his duties." In Morton's letter to the Civil Service Commission, announcing the transfer of Dennis, he stated: "His duties as division maintenance engineer will be performed by present employees of the divi-

sion." If there were any changes in the character of the duties of general maintenance engineer they appear to have been unsubstantial and colorable rather than real. Even in the absence of the stipulation referred to, there is nothing in the record to show that the Civil Service Commission was informed of any changes in the character of the duties of the positions in question or that it approved thereof or in any manner reclassified or regraded such positions or the duties thereof. Unsubstantial and merely colorable changes in the classification of positions are not a sufficient foundation to warrant the ousting of one employee and the appointment of another person to perform substantially the same duties. (5 R. C. L. 614; *Craighan* v. *O'Brien,* 199 Cal. 652, 660 [250 Pac. 653]; *Barry* v. *Jackson,* 30 Cal. App. 165, 169 [157 Pac. 828]; *McArdle* v. *City of Chicago,* 216 Ill. App. 343.) In the case last cited, some of the features of which are similar to those of this case, it is said: "One of the chief purposes of the Civil Service Act is to protect honorable and efficient employees from arbitrary ouster. The method of dismissal is as important as that of selection and appointment."

Section 14 of the act provides a simple and expeditious procedure for the removal of an employee for any of the causes therein enumerated, upon written charges and after a public trial before the Civil Service Commission or the "appointing power." It clearly appears that the "layoff" of the appellant, which was in effect a dismissal, was not authorized by the law or the rules and regulations of the Civil Service Commission. No civil service employee's position would be secure if he could be supplanted at the will of the appointing power by the transfer of an employee from a position or class of a lower grade.

It may be added, in justice to the trial judge, that the stipulation referred to and quoted herein covers material facts which it does not appear from the record were shown at the trial.

The judgment is reversed.

Plummer, J., concurred.