[L. A. No. 18270. In Bank. July 30, 1942.]

STANLEY E. REXSTREW et al., Respondents, v. CITY OF HUNTINGTON PARK (a Municipal Corporation) et al., Appellants.

Christopher J. Griffin, City Attorney, and Clarence M. Heublein for Appellants.

John J. Hamilton and Charles X. Arnold for Respondents.

GIBSON, C. J.—In this proceeding in mandamus the trial court entered a judgment reinstating respondents Rexstrew and Cantonwine, respectively, to the positions of fireman and policeman in the city of Huntington Park, California, and directing payment of their salaries from the date of dismissal from service until their reinstatement. The defendant city and its officers have appealed from the judgment.

Huntington Park is a city of the sixth class. (Municipal Corporations Act, Stats. 1883, p. 93, as amended, Deering's Gen. Laws, 1937, Act 5233.) In 1932 the electors of the city passed an initiative ordinance (No. 767) by which they inaugurated a civil service system for the employees of the fire department. In 1934 a similar initiative ordinance (No. 821a) was enacted for the members of the police department. In 1935 the Legislature conferred express authority on municipalities to enact such legislation for the selection, classification, suspension and discharge of appointive employees. (Stats. 1935, ch. 48, p. 380; Deering's Gen. Laws, 1937, Act 1401.) At the same session the Legislature ratified all existing municipal ordinances creating civil service systems. (Stats. 1935, ch. 136, p. 485; Stats. 1939, ch. 579, p. 1987; Deering's Gen. Laws, Act 1402.) This express ratification established the validity of the two initiative ordinances relied on by respondents. (*City of Sacramento* v. *Adams,* 171 Cal. 458, 464 [153 Pac. 908]; *City of Redlands* v. *Brook,* 151 Cal. 474, 478 [91 Pac. 150].)

The record shows that on or about June 10, 1938, the personnel of the fire department was increased by two new members, Snoeberger and Peterson. On August 22, 1938, approximately two months later, the city council passed a resolution (No. 1758) which recited that "for purposes of economy to effect a reduction of expenses in the Police and Fire Departments" the number of members of those departments should be reduced, and nine persons were ordered discharged. The resolution also recited that the employees so named were those

who could best be spared from their respective ranks and departments in order to bring about the required reduction in personnel. A few minutes before this resolution was passed, the chief of police and the chief of the fire department were requested, respectively, to name six members of the police department and three employees of the fire department who were least qualified for their positions. The names submitted by them were those set forth in the resolution, among which were included Cantonwine from the police department and Rexstrew from the fire department. At the time they were dismissed, Rexstrew had been a member of the fire department for ten years and Cantonwine had been employed in the police department for about six years. Snoeberger was not named among those dismissed from the fire department and has remained in his position since his appointment. Peterson was dismissed pursuant to the resolution but was reemployed in April, 1939. It further appears that several of the six members dismissed from the police department have since been reemployed in that department.

The trial court found that respondents, following their dismissal, made repeated attempts to obtain reinstatement by application to the civil service board, the city council and the heads of their respective departments, and that they brought this action after such endeavors had failed and within five months after their discharge. There was ample evidence to support the finding that they were not guilty of laches.

The trial court also found that respondents were not dismissed for the purpose of effecting necessary economy, that there was no lack of work in either department to warrant their discharge, that there were ample funds in the city treasury with which their salaries could have been paid for the fiscal year 1938-1939, and that they were not discharged in good faith, but for the purpose of enabling appellants to replace them by persons more favored by the governing officers of the city.

The members of the city council contend the resolution was passed in good faith and only for reasons of economy. They claim that shortly before the resolution was passed they received an audit showing a deficit in the city funds for the year closing June 30, 1938, and that in order to make up such deficit they reduced the personnel in the fire and police departments instead of raising the tax rate.

Contrary to appellants' contention that the dismissal

of respondents was necessary to effect economy, the evidence and inferences deducible therefrom adequately support the trial court's finding that such discharge was not in fact made necessary because of lack of funds, but was for the purpose of replacing respondents by other persons. The city treasurer testified that at the end of the fiscal year, June 30, 1938, there was in the general fund the sum of $83,064.70, and in the reserve "water" fund the sum of $59,656.66. Appellants admit such sums were on deposit as reserve funds at that time. During the examination of the city treasurer, counsel for appellants stated, "I will stipulate we had plenty of money to pay these salaries." There was evidence that, following the dismissal of Rexstrew, Snoeberger, a younger man who had been employed in the fire department only two months previously, was retained, and that Peterson, the other probationary employee and likewise a younger man, was subsequently reemployed. The evidence also showed that after Cantonwine's dismissal his duties as patrolman were performed by a school traffic officer whose classification was not within the provisions of the police civil service ordinance. Moreover, of the six members dismissed from the police department, four were given reemployment therein and some within two months after their discharge.

The power to abolish a position may not be used to effect the discharge of an employee protected by the salutary provisions of civil service regulations, unless such power is exercised in good faith. (*Livingstone* v. *MacGillivray*, 1 Cal. (2d) 546, 553 [36 P. (2d) 622]; *Childress* v. *Peterson*, 18 Cal. (2d) 636 [117 P. (2d) 336]; *Winslow* v. *Bull*, 97 Cal. App. 516, 523 [275 Pac. 974].) Here respondents held their respective positions under tenure acquired through the adoption of the civil service ordinances. Each had attained the status of a permanent employee and neither was charged with misconduct or any dereliction of duty referred to in the ordinances. The trial court's findings that the positions were not abolished in good faith, being supported by substantial evidence, will not be disturbed by this court.

■ Appellants also claim that section 852 of the Municipal Corporations Act, as reenacted in 1937 (Stats. 1937, p. 1811; Deering's Gen. Laws, 1937, Act. 5233), which provided that the city council should appoint all city employees, who should hold office "during the pleasure of said city council," operated as an implied repeal of any previous limitation

placed on the power to dismiss by the fire and police department ordinances. Repeals by implication are not favored and are recognized only when there is a conflict between two or more legislative enactments. (*Railroad Commission* v. *Riley,* 192 Cal. 54, 57 [218 Pac. 415], and cases there cited.) Section 852 of said act has been in effect in substantially the same language since the incorporation of the city. It was not materially different at the time the fire and police ordinances were enacted. The Legislature having expressly ratified the ordinances in 1935, it cannot be held they were intended to be repealed by implication at the next session of the Legislature by the reenactment of a section of a general law. Moreover, it appears that subsequent to the commencement of this action, and at the 1939 session of the Legislature the ordinances were again expressly ratified. (Stats. 1939, p. 1987.)

The evidence shows that commencing on September 1, 1938, all members of the fire and police departments of the city were subjected to a ten per cent decrease in salary, which is still in effect. The trial court properly deducted that percentage in awarding accrued salary to respondents.

The record fails to disclose, however, whether respondents have received remuneration from other employment since their discharge. If they have been gainfully employed, any remuneration received from such employment should be deducted from the accrued salary due them. (*Wiles* v. *State Personnel Board,* 19 Cal. (2d) 344 [121 P. (2d) 673]; *State Board of Equalization* v. *Superior Court, ante,* p. 467, 474 [127 P. (2d) 4].)

The judgment is therefore reversed and the cause is remanded for the purpose of taking evidence on the question whether respondents have received remuneration from other employment since their dismissal, such amount, if any, to be then deducted from the accrued salary awarded under the trial court's judgment. The trial court shall then issue its writ of mandate requiring the reinstatement of respondents, with accrued salary from the date of their discharge, less any sum received by them as salary from employment subsequent to their dismissal. Since respondents remain the prevailing parties, they are entitled to their costs on this appeal.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied August 27, 1942.