### SHELL OIL CO., Inc., v. COASTAL CLUB, Inc.

### COASTAL CLUB, Inc., v. SHELL OIL CO., Inc.

### No. 10891.

Circuit Court of Appeals, Fifth Circuit.

March 22, 1944.

Rehearing Denied May 3, 1944.

See 142 F.2d 245.

Geo. C. Schoenberger, Jr., and R. H. Whilden, both of Houston, Tex., for appellant Shell Oil Co., Inc.

LeDoux R. Provosty, of Alexandria, La., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

An oil, gas, and mineral lease was entered into on April 11, 1935, by The Coastal Club, Inc., as lessor, and Walter C. Peters, as lessee, covering some 6,000 acres of land in Cameron Parish, Louisiana. Peters, on May 3, 1935, assigned the lease to the Shell Oil Company, Inc. Rentals for deferred drilling operations were regularly paid until a well was commenced which was completed in June of 1940 as a producing oil well. A second well was completed in May of 1941 as a producing gas well. After demand for further development, Shell Oil Company, Inc., tendered The Coastal Club, Inc., a release of all the lands under lease except two hundred forty acres upon which were located the producing oil well and the producing gas well. Upon the tender being refused, Shell Oil Company, Inc., executed and placed of record an act of partial release of all lands except two hundred forty acres. Some months later, Shell Oil Company, Inc., executed and placed of record a further release covering one hundred sixty acres, retaining only forty acres around each well. Neither release was acquiesced in by The Coastal Club, Inc., nor were said releases placed of record with its consent.

The Coastal Club, Inc., brought this suit[1] against the Shell Oil Company for the cancellation of the lease except as to five acres around the oil well, claiming that the defendants had breached the lease contract by failing adequately to develop the premises, and that it had further abandoned and terminated the lease agreement, which was an indivisible contract, by executing and placing of record the partial releases. Statutory attorney's fees also were claimed by reason of defendant's refusal, upon demand, to release the lease of record. In the alternative, damages in the sum of $36,000 were sought on the ground that such amount would have accrued to the lessor had the lessee performed its obligations to drill an additional well on the premises.

The case was tried to the court without a jury. The court found as a fact that no further drilling upon the leased premises would have been desirable or profitable, that the lease had been reasonably developed,[2] and that the Shell Oil Company, Inc., had fully performed all of the express and implied obligations of the lease. The correctness of these findings is not challenged, and no appeal was taken therefrom. The court also held that the lease was an indivisible contract, and that the partial releases executed and placed of record by appellant were ineffective; hence, did not operate an abandonment of its leasehold rights. After reaching these conclusions, however, the lower court referred to and quoted from paragraph 8 of the lease, which reads in part as follows [51 F.Supp. 819, 823]:

"In case of cancellation or termination of this lease for any cause, Lessee shall have the right to retain under the terms hereof five acres of land around each well producing, being worked on, or drilling hereunder, such tract to be designated by Lessee in as near a square form as practicable. * * *"

The court then said:

"We determine that the lease contract is indivisible, but that it has not been abandoned. But, we have the words: 'In case of * * * termination of this lease for any cause'; this suit, we rule, is a cause for the termination of the lease. * * *"

Accordingly, the court entered a judgment for the cancellation of the lease except as to five acres in a square surrounding each well, and assessed the costs equally against the respective parties. Appealing therefrom, the Shell Oil Company, Inc., contends that upon the facts found by the court below it was entitled to a judgment in its favor; that the court erred in ruling that this suit was cause for termination of the lease, and erred in ruling that appellant was entitled to retain five acres only around each well drilled upon the leased premises, and in taxing to it one half of the costs. The Coastal Club, Inc., contends that the partial release of all acreage in the lease except forty acres around each well operated to cancel and terminate the lease within the provisions of paragraph 8 thereof; and upon its own appeal contends that the court, having ordered the cancellation of the lease, erred in denying to it statutory attorney's fees in the amount stipulated between the parties to be reasonable, and in assessing to it one-half of the costs of the suit.

The lease was given in April of 1935, for a term of five years and as long

---

[1] The suit was filed a short time after the recording of the first release and was pending when the second release was recorded.

[2] The court below found that a clear preponderance of the evidence established: That the lands included in the lease are embraced in and form part of the Southeast Extension of the Chalkley Field, Cameron Parish, Louisiana; that the said Southeast Extension is a separate reservoir, separated by a fault from the main Chalkley Field; that there was only one producing oil sand in said Southeast Extension; that two wells had been drilled to the producing sand by appellant, an oil well and a gas well; that the eight wells then drilled in the field were draining substantially all of the oil recoverable from the producing sand, and that said eight wells would produce all of the recoverable oil from the field; that the productive acreage of the lease is from 11.4% to 12.23% of the total productive acreage in the field, and that the total reserves of the recoverable oil under lessee's land in the field was 12.4% of the total in the field; that under existing conditions in the field, the lease would produce 15.65% to 16% of the field total, and that based on estimates of production by witnesses for appellee, its lease would produce in excess of 184,000 to 185,000 barrels above its original reserve of oil, and that based upon appellant's experts, it would produce from 70,000 to 80,000 barrels in excess of its original reserve of oil; that an additional well would not be desirable or profitable.

thereafter as oil, gas, or other minerals were produced thereunder. The primary term has expired. There is no question, therefore, of rentals. The property concededly has been adequately developed. The result is that the Shell Oil Company, Inc., has, by complying with the express and implied conditions of the lease, fully acquired the leasehold rights, and its position is exactly that of owner of a fully developed lease.

■ Before the lease was granted, that provision which gave the right to assign in part—the segregated portion to pass unaffected by default by the owner or owners of the other acreage—was deleted from the lease contract. This, in our opinion, had the effect of making it indivisible.[3] But such fact did not prevent the appellant from assigning a portion of the premises to others or from releasing, as it attempted to do, a portion of the premises to the appellee. But, whether this is so or not, appellant has not assigned any part to others, and this question is not present; nor has the lessor acquiesced in or consented to the releases executed in its behalf; hence, said releases are in fact and in law ineffectual. As the matter stands, therefore, no assignment has been made, and the situation is as if no partial releases had been executed and placed of record.

■ The court below considered this suit, of itself and without more, cause for terminating the lease under paragraph 8 of the lease contract. This is made clear by the court when, after quoting from said paragraph 8, it said:

"But, we have the words: 'In case of * * * termination of this lease for any cause'; this suit, we rule, is a cause for the termination of the lease."

Paragraph 8, in which the words referred to appear, is a paragraph inserted to protect the lessee of a producing lease when his lease for any legal cause is cancelled and terminated. The mere existence of this suit is not, of itself, cause for the termination of the lease. The findings of fact and conclusions by the court below demonstrate this, for the court has found that the grounds urged for cancellation or termination of the lease do not exist. "Cause," as used in the paragraph, means legal cause; a cause that warrants and re-

sults in a final judgment by a court of competent jurisdiction ordering the lease cancelled or terminated. To say that this suit of itself and without more is cause for the termination of the lease is to subject the lessee to the mere whim, caprice, prejudice, or passion of the lessor. No such purpose may be associated with the word "cause" in the paragraph in question. Nor can "cause," in said paragraph properly be given the interpretation given it by the court below.

Upon the facts found, Shell Oil Company, Inc., was entitled to judgment.

Reversed and remanded.

[3] Murray v. Barnhart, 117 La. 1023, 1027, 42 So. 489; Cochran v. Gulf Refining Co., 139 La. 1010, 1019, 72 So. 718; Nabors v. Producers' Oil Company, 140 La. 985, 1002, 74 So. 527, L.R.A. 1917D, 1115.