## HOYER v. UNITED DRESSED BEEF CO., Inc., et al.

No. 5208.

District Court, S. D. California, Central Division.

May 31, 1946.

Findings of Fact June 14, 1946.

Charles H. Carr, U. S. Atty., Ronald Walker and James C. R. McCall, Asst. U. S. Attys., all of Los Angeles, Cal., for plaintiff.

Ezra Neff, of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

By this action, George Henry Hoyer, the plaintiff, a discharged soldier, seeks to compel his restoration by the defendants, to his pre-war employment as hog buyer at his previous salary of $60 per week.

The defendants are meat packers. The action demands the benefit of the remedy established by the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308(b).

In MacMillan v. Montecito Country Club, D.C.Cal., 1946, 65 F.Supp. 240, 242, I had occasion to interpret this statute. The problem there involved was somewhat different,—whether a person occupied a position "in the employ of any employer", or was an independent contractor. I held that the plaintiff, a golf professional, was not an independent contractor, because he was under the control of the employer. In determining the case, I called attention to the fact that the re-employment provision of this war statute should be given a liberal interpretation, saying: "As the object of the Selective Service & Training Act of 1940 was to insure that 'the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system,' 50 U.S.C.A.Appendix, § 301(b), we are bidden to interpret its terms liberally in order to effect its aim, which, in its reinstatement provision, is to restore the soldier to the position he left without any 'greater setback in the private pursuit or career of the returning soldier than is unavoidable.' Kay v. General Cable Corp., 3 Cir., 1944, 144 F.2d 653, 654."

In Kay v. General Cable Corporation, cited in the quotation, the Court said, in effect, that if the employer, by reason of change of conditions, has been compelled to discontinue the particular work which the employee performed before he entered the military service, or to abolish the department or activity over which he presided, he was not required to create a new or useless job in order to re-employ the former employee. The Court's language is very clear: "The Act says, unless the 'employer's' circumstances have changed. Primarily, no doubt, this was intended to provide for cases where necessary reduction of an employer's operating force or discontinuance of some particular department or activity would mean simply creating a useless job in order to reemploy the plaintiff. * * * Accepting the defendant's contention that there would be some loss of effi-

ciency and possibly some additional expense involved, more than that is needed to justify refusal to reinstate a person within the protection of the Act. In most cases it is possible to give some reason for the refusal. 'Unreasonable' means more than inconvenient or undesirable. The defendant's argument upon this point, if carried to its necessary conclusion, would defeat the main purpose of the Act and limit its operation to merely capricious or arbitrary refusals. Men and women returning from military service find themselves in countless cases, in competition for jobs with persons who had been filling them in their absence. Handicapped, as they are bound to be by prolonged absence, such competition is not part of a fair and just system, and the intention was to eliminate it as far as reasonably possible. The Act intends that the employee should be restored to his position even though he has been temporarily replaced by a substitute who has been able, either by greater efficiency or a more acceptable personality, to make it desirable for the employer to make the change a permanent one." Kay v. General Corporation, supra, 144 F.2d at page 655.

In that case, a physician had been employed, on a part-time basis, to manage a health bureau for the company. During his absence, they abolished his position and transferred the work he was then doing to the physician doing it also for the insurance company. This, they claimed, worked for greater efficiency. Yet the Court held that there should be reinstatement.

The case before us is not a case where restoration was refused. Here there was reinstatement on August 20, 1945, and discharge without cause on October 12, 1945. For this reason I think the entire defense has been misconceived. When a veteran has been restored, he can only be discharged for cause. And this complaint is grounded upon the very provision of the law relating to reinstatement and upon the contention that the plaintiff was first reinstated and later discharged without cause. Subsection (c) of Section 308, Title 50 Appendix, states: "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) * * *

shall not be discharged from such position without cause within one year after such restoration." ·

The restoration here was under subsection (b) (3) (B), which says: "If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so."

What do the words "without cause" mean? For many years they have appeared in private contracts of employment and in civil service legislation, the aim of which is to insure permanency of position. The books are full of cases in which attempts have been made to rid oneself of an employee under the guise of abolishing his position. The Appellate Courts of California, beginning with Winslow v. Bull, 1929, 97 Cal.App. 516, 275 P. 974, which is probably the leading case on the subject in California, hold that "colorable" change of classification, in order to deprive a person of employment and to pass on the work to another, is not a discharge for "cause". See Livingstone v. MacGillivray, 1934, 1 Cal.2d 546, 36 P.2d 622; Childress v. Peterson, 1941, 18 Cal.2d 636, 117 P.2d 336; Rexstrew v. City of Huntington Park, 1942, 20 Cal.2d 630, 128 P.2d 23.

■■ "Without cause" means the absence of any legal ground or excuse in the performance of a person's work, which would warrant his being laid off. Conversely, it implies that the only "cause" which would warrant discharge would be lack of skill, competence, diligence, or loyalty in the performance of one's duties. See Kennedy v. Board of Education, 1890, 82 Cal. 483, 490, 22 P. 1042; Zurich, etc., Insurance Co., Ltd., v. Kinsler, 1938, 12 Cal.2d 98, 99, 81 P.2d 913; Shell Oil Co. v. Coastal Club, 5 Cir., 1944, 141 F.2d 382, 394; And see, 6 Words and Phrases, Perm.Ed., "Cause", pp. 328–332.

Here, no conditions attached to the restoration. Mr. Sam Borne, one of the officers of the defendant corporation, testified on behalf of the defendants. But his brother, who. with him, controlled the cor-

poration, did not testify. We have the statement of the plaintiff, which is uncontradicted, that while Mr. Sam Borne said, "We will see what can be done. Things have changed", when he went back for another interview, the brother, Ben, just said, "Go back to work". No new duties were prescribed for him. He was not told to go out and purchase a minimum quantity of hogs. This quantitative theory, propounded in this court, seems to have been an afterthought. After the evidence was concluded, I asked certain questions of Mr. Sam Borne, which he answered very honestly and frankly. In substance, he said that so far as he was concerned, he was in doubt whether there was a place for the plaintiff, but that thereafter his brother restored the plaintiff, and he "just let it go". Neither he nor his brother, when they gave the plaintiff his last check, said, "You are not getting as many hogs as you did before you went into the service."

So the upshot of the matter is this: We have the employer restoring the employee to his former job. Later, because the work is not so profitable to them as before, they tell him, in effect, "You have to work on a commission basis",—a new basis. That is exactly the "colorable compliance" which the Congress had in view and sought to avoid when it decreed that after the employee had been restored to his job, he could not be discharged "without cause".

There is no showing of incompetence, or disloyalty, in the plaintiff's work. He did not buy as many hogs as before. The job did not require the skill it required before. But the employer should have thought of this when he re-employed him. They knew the changed conditions. The plaintiff was restored to his former job, and no new conditions were attached to it. They found that a young nephew of Mr. Sam Borne could flip a coin and thereby be given a chance to purchase the few hogs in the market and that this did not require the skill of a trained hog-buyer. So the plaintiff was told that he would have to go on a commission basis. But these were not the terms under which he had been employed before.

I think that a great deal of importance has been attached to some contradiction between the testimony of Mr. Sam Borne and Mr. Hoyer as to who did the buying before the plaintiff joined the Armed Forces. To my mind, this fact is of little significance. It is quite apparent that Mr. Hoyer bought hogs at the stockyards, and also from others. The bookkeeper of the defendants corroborated his statements. He said that he would not have had the plaintiff initial the orders unless the plaintiff had had something to do with them, and that this was his authority for paying the bill, when he was not familiar with a particular order. No one charges that Mr. Hoyer deliberately, knowing that he would come back three years afterward, put his name on the invoices in order to make a showing. These invoices have been in the possession of the employer, and have not been tampered with.

It is clear, from the admissions on both sides, that both Mr. Sam Borne and Mr. Hoyer bought hogs. Mr. Hoyer may be wrong in saying that he bought all the hogs, because Mr. Sam Borne was his employer, and probably bought them from persons with whom he had been dealing before Hoyer was ever employed. In the correspondence of the employers with the Draft Board, they stated that Hoyer was employed in purchasing hogs at "the stockyards and elsewhere". Mr. Sam Borne explained that he was required to do so because the stockyards would not let him operate unless Hoyer had this authority. In other words, Hoyer had duties not only as to the stockyard purchases of hogs, but also as to purchases elsewhere. Whether they amounted to ten, fifteen or one hundred per cent of what the firm bought is of little import.

If, by reason of scarcity of hogs or other conditions, the defendant had been compelled to do away with this job, and had done so in good faith, we might say that the job had disappeared. But I do not think such conclusion is warranted. Here Mr. Ben Borne allowed his son to marry at the age of eighteen. This boy was given a job at $60 per week. The fact that the company found room for this boy of eighteen to do some of the work which the plaintiff had done, at the same compensation, shows that there had not been such change

of employment as to warrant discharging, without cause, an employee whom they had restored.

■ As a matter of fact, although the question has not been raised by a motion to strike it, I am convinced that the defense of 'changed conditions is not available. However, as I sit in this case more or less as a court of equity, I think it was best that, regardless of the technicalities of the law, all the facts should be gone into. And so, on the facts before me, even if it be conceded that the present employment of Mr. Hoyer by the company might not be so profitable, or might even be unprofitable, he is still entitled to the relief he asks.

■ As the Circuit Court of Appeals for the Third Circuit has said in Kay v. General Cable Corporation, supra, the mere fact that re-employment may involve some additional expense, and be less desirable or result in loss in efficiency does not give rise to the "changed circumstances" which would make it "impossible" or "unreasonable" to reinstate the employee within the contemplation of the statute. 50 U.S.C.A. Appendix § 308(b) (3) (B).

■ To sum up: The plaintiff was re-employed unconditionally. He was required to do what he had done before and he did it, under the limitations of a shrunken market caused by war conditions and restrictions. Therefore, he was discharged "without cause." 50 U.S.C.A.Appendix, § 308(c),

And I so find.

Under the defense of "changed circumstances", I find that the conditions under which the employers worked are not such as to make it "impossible" or "unreasonable" for them to re-employ the plaintiff.

■ I have given some thought to the question whether the $100 per month which the petitioner has received from the Government, during his unemployment, as a readjustment allowance, should be deducted from the award. [See Finding IX, infra]

If anyone is entitled to reimbursement, it is certainly not the employer, but the Government. But, in reality, the allowance is not "earnings". Where one seeking reinstatement has been employed in the meantime, his "earnings" would be deductible from the award. The payments here were made to the veteran, through the munificence of the Government, which thereby made up for the delinquency of the employer. They should not be deducted.[1]

A decree will, therefore, be entered for the plaintiff ordering him restored to his position at the rate of pay of $60 per week and that he also have judgment ordering the defendants to pay him at the rate of $60 per week from the time of his discharge to his restoration.

The attorney for the plaintiff will prepare and present findings.

## Findings of Fact

I. On March 26, 1942, George Henry Hoyer, the petitioner, left his position as hog-buyer in the employ of respondent, United Dressed Beef Co., Inc., in order to perform training for service in the United States Army, pursuant to the requirements of the Selective Training and Service Act of 1940. This position was other than temporary, and the duties thereof were to buy hogs for the United Dressed Beef Co., Inc., at the Los Angeles Union Stockyards and elsewhere. On August 9, 1945, he satisfactorily completed his period of training and service, received a certificate thereof,

---

[1] While no cases involving this question have arisen under the present Act, this ruling conforms with the principle established by decisions in cases arising under the National Labor Relations Act, Sec. 160(c), Title 29 U.S.C.A. In ordering reinstatement of persons wrongfully discharged, the National Relations Board is authorized to determine whether it shall be "with or without back pay." This is authority for allowing the deduction of moneys received from public or private employment. See Republic Steel Corporation v. National Labor Relations Board, 1940, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6. However, the courts have held that unemployment benefits under state law or from a union unemployment fund are not "earnings" for which the employer should receive credit. Marshall Field & Co. v. National Labor Relations Board, 1943, 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744; National Labor Relations Board v. Isthmian S. S. Co., 2 Cir., 1942, 126 F.2d 598; National Labor Relations Board v. Brashear Freight Lines, 8 Cir., 1942, 127 F.2d 198.

and was honorably discharged from the United States Army.

II. On August 20, 1945, George Henry Hoyer applied to the respondent for re-employment and was thereupon re-employed in his former position of hog-buyer, at his former rate of pay, to wit, $60 per week. At the time he was so re-employed, George Henry Hoyer was still qualified to perform the duties of his former position as hog-buyer; and the respondent's circumstances had not so changed as to make it impossible or unreasonable for it to re-employ and restore him to his former position.

III. On October 12, 1945, Sam Borne, the president and general manager of the business of the United Dressed Beef Co., Inc., informed George Henry Hoyer that his employment as hog-buyer at the rate of $60 per week would no longer be continued, and that his further employment in that position would be only upon a commission basis, to wit, at a commission of ten cents per hundredweight for such hogs as he might purchase at the Los Angeles Union Stockyards; and that he would discuss with George Henry Hoyer during the following week whether the latter would be continued in his position upon such commission basis. The parties recognized as a fact, and the Court finds, that the change in rate of compensation would have reduced the weekly pay of George Henry Hoyer from $60 per week to approximately ten or twelve dollars per week; and George Henry Hoyer thereupon refused to work at the reduced rate of pay, and did not work in such position after said date.

IV. The United Dressed Beef Co., Inc., is and was accustomed to purchase only a minor portion of its hogs at the Los Angeles Union Stockyard; but it has always purchased the bulk, or larger percentage elsewhere, for direct shipment to its plant from the sellers' places of business in other towns and states. The hogs purchased for direct shipment were not traded in at the Los Angeles Union Stockyards, but were generally secured from live stock brokers, with whom George Henry Hoyer dealt.

V. There is a conflict in the testimony as to whether, prior to his military service, George Henry Hoyer purchased all the hogs slaughtered by the United Dressed Beef Co., Inc., including those purchased from live stock brokers for direct shipment; but the Court finds that he made purchases both at said stockyards and elsewhere, whenever necessary, from brokers or dealers for direct shipments. After his re-employment in August, 1945, he was not directed or authorized to purchase hogs for direct shipment, but all such purchases were made by Sam Borne, in person. Paul Borne, a nephew of Sam Borne, was at that time, and has ever since continued to be, employed in buying hogs for United Dressed Beef Co., Inc., at the Los Angeles Union Stockyards at a rate of pay of $60 per week. This nephew, who is a young man 18 years of age, first entered upon such employment with United Dressed Beef Co., Inc., during the absence of George Henry Hoyer in the military service.

VI. After his re-employment on August 20, 1945, George Henry Hoyer efficiently rendered all such services as hog-buyer as the United Dressed Beef Co., Inc., required of him or instructed or authorized him to render; and he gave no cause for discharge

VII. The offer of compensation on a commission basis after October 12, 1945, was so materially different from the compensation provided in the terms of employment, at $60 per week, as to amount to a discharge, and George Henry Hoyer was not required to work in his former position at such reduced compensation.

VIII. The evidence does not disclose that, either at the time of the discharge of George Henry Hoyer on October 12, 1945, or since then and up to the time of the trial, the circumstances of the respondent United Dressed Beef Co., Inc., had so changed as to make it impossible or unreasonable for it to continue the re-employment of the veteran which it had instituted on August 20, 1945.

IX. From October 12, 1945, to date, George Henry Hoyer has been unemployed or self-employed. He made application for and secured a United States Government

loan enabling him to purchase, and he did purchase, a ranch; and has been engaged in operating the same, but the operation of the ranch has not as yet been profitable. He also applied for, and for several months has been receiving, a readjustment allowance from the United States, in the amount of $100 per month, under the provisions of Section 902, Chapter IX, Title V, of the Servicemen's. Readjustment Act of 1944, 38 U.S.C.A. § 696d, popularly known as the "G. I. Bill of Rights", which afford such allowances to veterans who are self-employed and whose earnings therein are less than $100 per month.

X. After his discharge by United Dressed Beef Co., Inc., on October 12, 1945, George Henry Hoyer promptly applied to the Selective Service System and the United States Attorney for Southern District of California to negotiate for him for relief from his discharge under the re-employment provisions of the Selective Training and Service Act; and the veteran, being unsuccessful in these negotiations, this suit was filed to secure his reinstatement in his former position at his former rate of pay, together with compensation for his loss of wages, the United States Attorney acting as attorney for the veteran.

## Conclusions of Law

1. George Henry Hoyer was illegally discharged without cause by the United Dressed Beef Co., Inc., on October 12, 1945, eight weeks after his re-employment in the position of hog-buyer for that company at the wage rate of $60 per week on August 20, 1945, pursuant to the re-employment provisions of the Selective Training and Service Act of 1940.

2. George Henry Hoyer is lawfully entitled to be restored to that position at the rate of pay of $60 per week, for an additional 44 weeks; and not to be discharged from that position without cause within that time; and is further entitled to be compensated by the United Dressed Beef Co., Inc., for loss of wages and benefits suffered by reason of its unlawful action, at the rate of $60 per week from October 12, 1945, until he shall have been restored, or offered restoration, in that position, by the United Dressed Beef Co., Inc.

3. The readjustment allowance paid to George Henry Hoyer by the United States does not constitute earnings in other employment, and the United Dressed Beef Co., Inc., is not entitled to have the payments made under such allowance credited against loss of wages caused by its unlawful actions.