[Civ. No. 33920.   Second Dist., Div. Three.   Sept. 23, 1969.]

MICHAEL J. TRUJILLO, Plaintiff and Respondent v. CITY OF LOS ANGELES et al., Defendants and Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Edward C. Farrell, Assistant City Attorneys, and Jack L. Wells, Deputy City Attorney, for Defendants and Appellants.

Rich & Ezer and Michael J. Ezer for Plaintiff and Respondent.

SCHWEITZER, Acting C.J.—In this proceeding in mandamus the trial court entered a judgment ordering defendants to re-create the position of manager of harbor real estate, Harbor Department, City of Los Angeles and to reinstate petitioner Trujillo to said position, and directing payment of his salary, less amounts paid to him in a subordinate position, from date of abolition of the position to date of reinstatement. Defendants appeal from the judgment, contending the trial court erred (1) in permitting the introduction of extraneous evidence of motives of the board of harbor commissioners in abolishing petitioner's position, and (2) in holding that petitioner's subsequent resignation from a subordinate position and withdrawal of his pension contributions did not constitute a severance of his employment rights.

Defendants request that the case be remanded for the purpose of taking additional evidence to determine whether petitioner has received remuneration during the interim period from other employment. Defendants also petition this court,

pursuant to section 909, Code of Civil Procedure, and rule 23, California Rules of Court, for leave to produce additional evidence on appeal as to the effect a November 1968 reorganization of the harbor department has on petitioner's rights.[1]

In 1955, acting upon recommendations of an independent management consulting firm, the Los Angeles Harbor Department created the civil service position of manager of harbor real estate to manage in excess of 1,000 acres of valuable harbor land, either under lease or available for lease, under the jurisdiction of the harbor department. The position was placed under the immediate supervision of the general manager, harbor department. Departmental procedure was for the real estate manager to negotiate and review leases, to submit proposals to the general manager for review, and if approved, the proposals would then be submitted to the board of harbor commissioners for final approval.

The importance of the position and an effect of the 1955 organizational change is reflected by the increase in lease revenues from approximately $1,500,000 in the 1954-55 fiscal year to in excess of $3,500,000 in the 1965-66 fiscal year from over 300 separate leases.

On March 1, 1964 petitioner was appointed acting manager of harbor real estate to fill a then-existing vacancy. In September 1964, following a civil service examination, he was appointed manager. In March 1965, following the successful completion of his probationary period, he received permanent tenure, subject to civil service regulations.

### Evidence of Motive for Board Action

On February 23, 1966, the board of harbor commissioners adopted a resolution abolishing petitioner's position of manager of harbor real estate, effective March 25, 1966, for the stated reason of ''economy and efficiency.'' The resolution made no mention of its effect on the other personnel in the real estate department and, in particular, on the position of assistant manager of harbor real estate, then held by a Mr. Powell. It apparently was assumed that the real estate department would function without a manager, Powell, the assistant manager being in charge.

During the board's discussion of the resolution it was stated that petitioner had no civil service displacement rights

---

[1]Trial commenced April 22, 1968, was concluded May 16, 1968, and judgment signed and entered July 15, 1968.

over subordinates. Shortly after the resolution was adopted, the civil service commission notified the board of harbor commissioners that petitioner had a displacement right over subordinate employees, and that he had elected to exercise such right by taking the position then occupied by Powell.

Over defendants' objections the trial court admitted evidence of the board's motives in adopting the resolution—to get rid of petitioner and replace him with Powell. The evidence in support of this conclusion was overwhelming and for the most part was undisupted. There had been no study or discussion on the subject of "economy" and "efficiency." The action was not taken in connection with any departmental reorganization.[2] There was no evidence of lack of funds to meet the expenses of the real estate staff. There was evidence that the office of manager of harbor real estate was performing a vital and important service. No charges of any kind had been brought against petitioner and none were contemplated. The undisputed evidence was that petitioner was an honest, able and loyal employee, that his one fault was that he refused to compromise his judgment and integrity because of commercial and political pressures by recommending leases which in his opinion were below fair rental standards.

To meet its dilemna caused by civil service requirements the board of harbor commissioners voted to create a new position for petitioner, giving him the same title with the same job description as that of Powell. To accomplish its purpose, the board transferred to Powell most of the duties and responsibilities theretofore assigned to petitioner, and instructed the general manager, harbor department, to assign to petitioner miscellaneous work unconnected with real estate. Powell's salary was increased; petitioner's was decreased so that it was less than that formerly paid to his assistant.

Based on this evidence the trial court found that "[t]he abolishment of the position of Manager of Harbor Real Estate was not taken in good faith by the Harbor Commission for the stated reason of economy and efficiency, nor was it taken to eliminate an unnecessary position. The stated reason of economy and efficiency was a mere subterfuge to mask the true intent of the Harbor Commission, which was to totally

---

[2]Defendants presented evidence of a reorganization plan affecting the real estate department, but admittedly it had not been completed as of the date of the abolishment resolution and was not implemented until September 3, 1967, 17 months thereafter. On appeal defendants do not contend that evidence of this purported reorganization affected petitioner's rights.

eliminate Petitioner's connection with and employment by the City of Los Angeles. . . ." Defendants do not question the sufficiency of the evidence to support this finding; their argument is that the evidence of motive was inadmissible. On the other hand, petitioner contends that the evidence was properly admitted, that it clearly shows bad faith, and seeks to set aside the orders of the board and to recover the difference in salary paid him and that to which he was entitled as manager of harbor real estate.

Defendants' objection to the receipts of extraneous evidence of motive on the part of the board of harbor commissioners was based on the long established rule that in passing on the legality of acts of legislative bodies, the courts cannot inquire into the motives behind such acts, as discussed fully in *Stahm* v. *Klein,* 179 Cal.App.2d 512, 518-520 [4 Cal.Rptr. 137] (hearing denied). Defendants rely on *Livingstone* v. *MacGillivray,* 1 Cal.2d 546 [36 P.2d 622], where the petitioner's civil service position in a city's water department was abolished by resolution of the board of water commissioners for the stated reason of economy. Petitioner there contended the action was taken for political reasons and in bad faith. The court noted that bad faith had not been pleaded, but stated on page 558: "Furthermore, even if bad faith had been pleaded, proof of extraneous facts for the purpose of showing motive was not allowable in the absence of some showing on the face of the resolution of abolition that it was adopted from improper motives. [Citation.]"

As noted in *Stahm, supra,* at pages 520-521, the rule is subject to exceptions. Where the law, ordinance or resolution shows on its face or in its results an improper purpose, motive or intent, thereby causing damage to a person, courts may intervene. Petitioner contends that this case falls within the exception, that the evidence of the results of the resolution clearly shows bad faith and therefore was properly admitted and considered by the trial court. Petitioner relies on *Rexstrew* v. *City of Huntington Park,* 20 Cal.2d 630 [128 P.2d 23], where bad faith was shown by results. Nine police and firemen were discharged by resolution "for purposes of economy" when, in fact, there was plenty of money in the treasury. Two probationary employees were retained or rehired soon after, as well as several others of those discharged. The Supreme Court stated on page 633:

"The power to abolish a position may not be used to effect the discharge of an employee protected by the salutary

provisions of civil service regulations, unless such power is exercised in good faith. (*Livingstone* v. *MacGillivray*, 1 Cal.2d 546, 553 [36 P.2d 622]; *Childress* v. *Peterson*, 18 Cal.2d 636 [117 P.2d 336]; *Winslow* v. *Bull*, 97 Cal.App. 516, 523 [275 P. 974].) Here respondents held their respective positions under tenure acquired through the adoption of the civil service ordinances. Each had attained the status of a permanent employee and neither was charged with misconduct or any dereliction of duty referred to in the ordinances. The trial court's findings that the positions were not abolished in good faith, being supported by substantial evidence, will not be disturbed by this court.''

A similar result was reached in *Hanley* v. *Murphy*, 40 Cal.2d 572 [255 P.2d 1], and *Charamuga* v. *Cox*, 207 Cal.App. 2d 853 [24 Cal.Rptr. 811]. (See *Garvey* v. *City of Lowell*, 199 Mass. 47, 50 [85 N.E. 182, 127 Am.St.Rep. 468], cited and quoted in *O'Neill* v. *Williams*, 53 Cal.App. 1 [199 P. 870].)

We conclude that this case falls squarely within the holding of *Rexstrew, supra* and that the trial court properly admitted and considered the extraneous evidence. Furthermore, we find support for this conclusion on another ground, recently referred to by our Supreme Court in *Walker* v. *County of Los Angeles*, 55 Cal.2d 626 [12 Cal.Rptr. 671, 361 P.2d 247], wherein action of a board of supervisors was questioned by civil service employees. The court, without discussing the foregoing rule and exceptions thereto, stated on pages 635 and 636: '' [T]he 'principle which accords the great dignity of conclusiveness to determinations of the general legislature . . . is not only not applied to the proceedings of inferior legislative tribunals, but is distinctly held to be nonapplicable.' (*San Christina Inv. Co.* v. *San Francisco*, 167 Cal. 762, 770 [141 P. 384, 52 L.R.A. N.S. 676]; see also *Berkeley High School Dist.* v. *Coit*, 7 Cal.2d 132, 136-137 [59 P.2d 992].)''

The trial court in paragraph VIII of its well-reasoned opinion made pertinent observations as to the need for court review of job abolishment orders affecting civil service employees of the City of Los Angeles:

''Under the Civil Service System of the City of Los Angeles, no procedure is provided whereby the displaced employee can challenge the 'good faith' of a job abolishment order before the Civil Service Department itself; (see next to last clause of Charter Section 125). He is left no alternative, in such a situation, except to file his action in court. This is

not the case in many other Civil Service systems, and the distinction must be borne in mind in analyzing the cases.

"In the case of an ordinary discharge 'for cause' through regular Civil Service processes, under the Los Angeles system, the employee may place the burden of proof upon the City, and the Civil Service Department may, if it finds the charges unsupported, restore him to his job. However, when a job is abolished, as under a so-called 'reorganization', the City Charter precludes the Civil Service Department (now called the "Personnel Department") from questioning the 'necessity' of the job abolishment (Section 125). This restriction necessarily passes on to the courts the duty of determining the issue of good faith. It cannot be assumed that the people of the City, in voting for Civil Service System in the Charter, intended to incorporate therein a perfect mechanical means for the destruction of that system. We can more plausibly assume that the people intended to leave the issue of 'necessity', with its necessary implications of good faith, to the decisions of a neutral outside tribunal which, sitting apart from the municipal organization, has traditionally dealt with problems of good and bad faith.

"The authority of the Los Angeles Civil Service Department to investigate situations wherein the remaining employees may be 'working out of Class', . . . affords no adequate remedy at all to the displaced employee when his work is scattered around among others as was done in this case and in the *Murphy* case [*Hanley* v. *Murphy, supra,* 40 Cal.2d 572]. It affords him only a displacement right, and even this right can be made difficult of enforcement by a clever alteration of job titles and a slight change of job descriptions, unless the courts stand ready to try the issue of 'good faith' in all cases."

### *Effect of Petitioner's Resignation*

Petitioner continued in his employment until December 5, 1967, when he resigned, submitting to the harbor department the following letter:

"It is with regret that I submit this letter of resignation from the City of Los Angeles Harbor Department effective December 5, 1967, at 8:00 A.M. I feel that it is my responsibility to bring out the facts concerning favoritism [*sic*] and partiality shown by the Board of Harbor Commissioners and other parties to certain tenants in the harbor. In order to discuss this matter openly and because I can no longer work

under the existing conditions, I have no choice but to resign.''

Following this resignation petitioner withdrew his paid-in contributions from the city's retirement fund. The trial court found that such resignation and withdrawal of funds did not result in a forefeiture of petitioner's rights, stating in paragraph IX of its opinion:

''The City contends that Trujillo has waived any right to be restored to his abolished position, by his resignation of December 7 [*sic*], 1967. The events leading up to this resignation should be briefly reviewed.

''After the abolition of his position as Manager of Harbor Real Estate, the Civil Service Department of the City ruled, correctly, that under its regulations, Trujillo had a displacement right, i.e., the right to displace any employee with less seniority holding a position previously held by Trujillo. Trujillo exercised this right and demanded his prior job of 'Assistant Developer and Manager of Real Estate.'. The Department complied, having no alternative. There were now two assistant managers (Powell and Trujillo) but, of course, no manager. The Board ordered the General Manager to restrict Trujillo from negotiating leases of any importance. Trujillo was given trivial work to perform and was, in effect, made to serve as Powell's subordinate. Powell's salary was increased several steps above Trujillo's. Their offices were switched. Trujillo created no trouble or disturbance in performing his assigned tasks. He objected, with good reason, to being assigned the task of drafting official orders of the Board, for the Board's signature. This was work for which he had no training, and an error would give the Board a technical reason for lawful discharge through Civil Service processes. Furthermore, it would furnish a plausible ground upon which to discredit Trujillo if it should ever come to light that an order drafted by him contained a hidden 'subsidy' to a tenant.

''The tensions that resulted from the disfavor of his superiors, the pendency of this lawsuit, and the pressures applied against him in an obvious effort to bring about his resignation, severely affected his health, and his doctor advised him to resign. Furthermore when questions concerning the regularity of the World Trade Center lease became a matter of widely publicized inquiry, Trujillo deemed it his duty to relate to the press his opposition to that transaction, and the reasons for his refusal to recommend it. He considered it

untenable to continue to work in the Department while publicly criticizing its transactions.

"For the foregoing completely legitimate combination of reasons, Trujillo resigned on December 7 [*sic*], 1967, and withdrew his accumulated pension contributions.

"He did not dismiss this lawsuit, however, nor did he sign any writing or make any oral statement, indicating any intention to waive, settle or release any of his rights under this suit. This suit is one which involves only the position of Manager of Harbor Real Estate. The job Trujillo resigned was, both technically and actually, an entirely separate, distinct and different right than the right which forms the subject matter of this action."

Defendants contend that the letter of resignation was clear and unequivocal and that parol evidence should not have been considered in interpreting it. "Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms.

"Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' [Citations.] If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for . . .' [citations], extrinsic evidence relevant to prove either of such meanings is admissible." (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.*, 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641].)

Here, notwithstanding the letter, petitioner continued the prosecution of his lawsuit for reinstatement to his former position. That fact alone indicates his intent not to waive his employment rights, but only to resign from the newly created position he then occupied, where his talents and experience were not being utilized, where he was being

assigned miscellaneous duties unconnected with his profession, and where he was working under intolerable conditions. We hold that the trial court properly received and considered extrinsic evidence in aid of its construction of the letter of resignation.

Defendants argue that a resignation is contractural in nature, that a tender of resignation is equivalent to an offer to terminate a contract of employment, and that, when accepted, there is an immediate termination of the employment relationship with no right of reinstatement. (*Abbott* v. *City of Los Angeles,* 178 Cal.App.2d 204 [3 Cal.Rptr. 127]; *Gresham* v. *Superior Court,* 44 Cal.App.2d 664 [112 P.2d 965]; *Shade* v. *Board of Trustees,* 21 Cal.App.2d 725 [70 P.2d 490]; *Kramer* v. *Board of Police Comrs.* 39 Cal.App. 396 [179 P. 216].) In *Thompson* v. *Brown,* 75 Cal.App.2d 344 [170 P.2d 1010], a county employee submitted a letter of resignation in which she demanded payment of her contributions to the retirement fund. The court stated it was not necessary to decide the case solely on the question of whether or not the resignation had been withdrawn prior to its acceptance because "[e]ven if it be assumed that the demand contained in said writing for the balance of the money credited to her on the books of the association did not necessarily constitute a confirmation of her resignation, yet by said demand she did admit permanent severance from her employment under civil service. . . ." (75 Cal.App.2d at p. 350.)

The pendency of petitioner's lawsuit for reinstatement to his former position and continued prosecution thereof after submitting a letter of resignation distinguish this case from those relied on by defendants. We have been unable to find any authority discussing such unique facts.

Defendants argue that petitioner waived his rights. ■ To constitute a waiver it is essential that there be an existing right, benefit or advantage, a knowledge, actual or constructive, of its existence, and an *actual intention to relinquish it,* or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished. *Waiver always rests upon intent.* ■ The question of waiver is a question of fact and if there be evidence sufficient to support the trial court's finding with respect thereto, that finding is binding on the appellate court. (*Kay* v. *Kay,* 188 Cal.App.2d 214, 218 [10 Cal.Rptr. 196].)

■ "The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that

does not leave the matter to speculation, and 'doubtful cases. will be decided against a waiver.' [Citation.] This is particularly apropos in cases in which the right in question is one that is 'favored' in the law; . . .'' *City of Ukiah* v. *Fones*, 64 Cal.2d 104, 107-108 [48 Cal.Rptr. 865, 410 P.2d 369].)

▆▆ The right in *Fones*, as here, was that of a discharged civil service employee to back wages, as to which the Legislature's established policy is to protect the wage earner's right to all wages that have accured. That same policy exists in this case. The court in *Fones* made it plain that this policy should not be undermined by a finding that an employee waived his rights except in the clearest of cases.

We hold that under the facts of this case the evidence was sufficient to support the trial court's finding that defendant, by resigning from the subordinate position, and withdrawing his contributions from the retirement fund, did not waive his rights to the ''abolished position.''

### Remuneration from Other Employment

- ▆▆ The trial court found that petitioner was entitled to recover the difference in the salary paid him and that which his former position would have paid him, had it not been abolished. The court found that petitioner had no income from any source between December 5, 1967, and May 16, 1968. The record fails to disclose whether he has received remuneration from other employment since such date. If he has been gainfully employed, any remuneration received from such employment should be deducted from the accrued salary due him. (*Rexstrew* v. *City of Huntington Park, supra,* 20 Cal.2d 630, 634.)

### Evidence of November 1968 Reorganization

Pursuant to section 909, Code of Civil Procedure, and rule 23, California Rules of Court, defendants in their reply brief ask leave to produce additional evidence on appeal and for this court to make findings of fact in its decision in connection with the following facts that have occurred since judgment: that on November 25, 1968, a Mr. Crawford was appointed to fill the position of second deputy general manager, harbor department; that Mr. Powell submitted his resignation from city service on November 26, 1968; that these changes resulted in the reorganization of the duties of the various officers and employees of the harbor department; that the duties of the second deputy general manager include real estate development and management; that as a result of the foregoing

reorganization, the reestablishment of the position of manager of harbor real estate and the filling of that position would serve no purpose and would be disruptive of the present operations of the harbor department; and that the present organization of the harbor department, without either a manager of harbor real estate or an assistant manager of harbor real estate complies with all applicable civil service rules and regulations and provisions of the Los Angeles City Charter relating thereto.

Obviously evidence in support of the foregoing allegations was not available at the time of trial. The request to produce additional evidence is deemed meritorious in order to obtain a complete adjudication of petitioner's rights. However, since the cause must be remanded for the purpose of taking evidence on the question whether petitioner received remuneration from other employment after May 16, 1968, we also remand the cause for the purpose of taking evidence on the issues pertaining to the November 1968 reorganization and its effect, if any, on the rights of petitioner. Since we have no evidence on the motives or purpose of this reorganization insofar as petitioner is concerned, we express no opinion as to its effect on his rights.

The judgment is reversed and the cause is remanded (1) for the purpose of taking evidence on the question whether petitioner received remuneration from other employment after May 16, 1968, such amount, if any to be then deducted from the accrued salary awarded under the judgment, and (2) for the purpose of taking evidence as to the effect, if any, the alleged November 1968 reorganization had on the rights of petitioner to reinstatement and salary. The trial court is directed to give leave to defendants to amend their answers to set forth allegations pertaining to the November 1968 reorganization. After further proceedings the trial court shall then issue its writ of mandate based on the findings of fact, conclusions of law and judgment heretofore filed as modified by the evidence presented at such hearing. Since petitioner remains the prevailing party, he is entitled to his costs on this appeal.

Cobey, J., and Allport, J., concurred.