## Glass v. Board of Common Council of City of Frankfort et al.

(Decided Feb. 4, 1936.)

POLK SOUTH, Jr., and BEN T. QUINN for appellant.

F. M. DAILEY for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Richard Glass is appealing from a judgment of the Franklin circuit court denying him the relief prayed for and dismissing his petition against the board of common council and the mayor of the city of Frankfort, whereby he sought a mandatory injunction directing such city officials to reinstate him to his position as policeman of the city of Frankfort in the same rank and standing as theretofore held by him in January, 1930, when he was dropped from the police force of the city.

It appears from the record that by an ordinance

passed by the board of council and approved January 14, 1930, it was provided that the police force, as then composed of ten members, be reduced to seven, and that the mayor be authorized and directed to indicate the three members to be dropped from the force.

Thereafter, by written communication to the council, the mayor recommended that J. D. Morgan, Richard Glass, and David Regan be suspended, and his recommendation was adopted and approved by the council. On March 10, 1930, the board of council adopted a resolution reciting that the three policemen having been laid off from the regular force, it appeared that seven policemen were not sufficient to properly police the city at all times; that additional duties would be imposed on the police force on account of increased traffic and ordinances regulating same, and it would not be sufficient to provide for the school children at various points. It authorized and empowered the mayor to appoint extra policemen, not greater in any event than three and as many less as he might deem advisable, to take care of emergencies that might arise, making it necessary to have extra police for the purpose of protecting the city and public and to hire and discharge extra policemen as he might deem necessary. It further provided that extra policemen should work under the guidance and authority of the chief of police while on duty and should be under the same regulations as regular policemen. This ordinance was effective from and after its passage, and three policemen were immediately appointed and have continuously served and have from that date received the same pay as regular policemen. Thereafter, on account of a vacancy caused by the death of one of the regular policemen, another special policeman was appointed who has served continuously since his appointment and has also received the same salary as a regular policeman.

In his original petition which was filed in August, 1932, appellant alleged in substance that the action of the council in reducing the number of policemen was not made in good faith and with the purpose and intention to bring about a reduction in the police force, but was enacted by the council for the purpose of arbitrarily, capriciously, and unlawfully depriving him of his office in violation of section 3351a-2, Ken-

tucky Statutes, which is a portion of the charter of cities of the third class in which Frankfort is included.

By answer appellees denied the allegations of the petition and affirmatively alleged that because of financial conditions of the city, a reduction of the police force was necessary as a matter of sound public economy. They set up other affirmative defenses which it is unnecessary to enumerate or discuss, since the issues and questions made by counsel for their respective parties have narrowed down to the allegations above indicated.

The case was submitted upon a stipulation of facts in substance showing that Glass was duly qualified to hold the office of policeman under the statutes of Kentucky and the ordinances of the city, and did hold the office and faithfully perform the duties thereof from July 1, 1926, until he was removed on February 1, 1930, under the ordinances of January 14, 1930, hereinbefore referred to, without any charges being preferred against him; that pursuant to the resolution of March 10, 1930, hereinbefore referred to, three special or extra policemen were appointed by the mayor who have served continuously since that date, drawing the salary and performing the duties of regular policemen.

The chancellor handed down a written opinion and adjudged that the mandatory injunction sought by plaintiff be denied and his petition be dismissed, and he is appealing.

We find counsel for the respective parties in agreement that under section 3351a-2, Kentucky Statutes, the common council or the city commissioners, as the case may be, in a city of the third class in the exercise of their discretion may provide for the reduction of the police force and the courts will not review or interfere with their action in so doing, in the absence of abuse of such discretion. However, counsel for appellant are now contending that courts will take into consideration acts and conduct of the council or commissioners subsequent to the removal of the policemen pursuant to an ordinance or resolution in determining whether such original action was in good faith or was merely a subterfuge to cloak wrongful acts under pretended legal authority, and further that appellees could not under the statute remove policemen, and fill their

places by the appointment of extra or special police to serve regularly.

Counsel for appellees asserts that a resolution reducing the police force in the interest of economy should not, in a suit by a discharged policeman for reinstatement, be disturbed as arbitrary, unreasonable, or corrupt, notwithstanding subsequent appointment of special police. Both cite and rely on the cases of Marcum, Mayor, v. Boggs, 258 Ky. 401, 80 S. W. (2d) 36; City of Middlesboro v. Byrd, 247 Ky. 348, 57 S. W. (2d) 49, 53; City of Middlesboro v. Gibson, 225 Ky. 120, 7 S. W. (2d) 825, and counsel for appellees cites a number of other cases dealing with the same question.

Section 3351a-2, Kentucky Statutes, in clear and unequivocal terms manifests a purpose and intention to secure as members of the police and fire departments men of honesty, sobriety, and integrity, possessing qualifications fitting them for such position and to secure and promote the orderly and continuous enforcement of the law and to protect the rights and property of the citizens. The statute, among other things, provides:

"Members of the police and fire departments otherwise qualified under this law shall hold their positions during good behavior, provided, however, that the provisions of this act shall not prevent the board from decreasing the number of firemen and policemen as the said board may from time to time deem proper.

"No member or officer of the police or fire department shall be removed from the force or fire department, reduced in grade, or pay, upon any reason except inefficiency, misconduct, insubordination or violation of law or of the rules adopted by the commissioners."

It will thus be seen that the lawmakers not only had in mind the qualifications and fitness of the men chosen to these positions, but threw safeguards around the men so chosen and insured them against removal at the caprice or whim of governing authorities so long as they met the reasonable exactions of the law by providing that they should not be removed except for inefficiency, misconduct, etc., or for causes which the council might deem proper.

In the case of the City of Middlesboro v. Byrd, **supra,** it is said:

"The order upon its face recites that the city is short of revenue with which to manage and operate its business; that the police department revenue of the city had become so reduced that it was necessary to maintain it from other sources of revenue, which the city was no longer able to provide; and that the financial condition of the city was such that it was unable then to pay its current obligations, and that therefore its judgment was that the police force should, under such circumstances, be reduced. The reasons thus appearing for their action cannot, it would seem, rightly be declared as arbitrary or capricious, but rather as announcing a policy of caution and economy such as might and should rightly appeal to the judgment and discretion of administrative officers looking to a beneficient and helpful administration of the people's business and affairs. Their secret motive in doing this, even if suspected of being one of less public concern than professed, is not to be inquired by us, but their following conduct and actions taken and had under this reduction are subject to our consideration, in judging their character as to whether they were cloaking wrongful conduct under the lawful declarations of an opportune resolution alleged passed as a subterfuge, or for making of it, but a shield and deceptive license for its later alleged unlawful and arbitrary action working to the hurt and injury of the plaintiffs, ousted from their positions by the artifice or plan of special police appointment of their favored friends thereto."

The same doctrine and principles run through all the other cases cited by counsel for the respective parties. There are apparent conflicts; however, when the cases are read and carefully analyzed, it will be seen that the apparent conflict arises from the application of the law to varying circumstances and conditions. Running through all the cases is the fixed principle that the court will not interfere with the discretion vested in the council or board of commissioners in the absence of abuse. The court has consistently refused to interfere where the governing authorities have, as **a matter of necessity and in the interest of economy,**

reduced the police force. The excerpt from the Middlesboro Case will reveal that the ordinances involved set forth the reasons for the action of the city council. Here the ordinance providing for the reduction of the police force makes no such recitation, nor does it assign any reason or cause for the action. The answer does allege in effect that the move was made in the interest of economy, but this allegation is not sustained by the stipulation or other proof. Neither pleading without proof, nor proof without pleading is sufficient. Gross v. Ball, 258 Ky. 730, 81 S. W. (2d) 409; Humbert v. Heyburn, 240 Ky. 405, 42 S. W. (2d) 538.

We are confronted with this state of facts: Appellant, according to the allegations of the petition and the stipulation of the parties, had been duly appointed and commissioned and had served faithfully and efficiently until he was suspended and dropped from the force without any charge being preferred against him or without any cause being assigned for such action. Within less than six weeks, the mayor, under authority attempted to be conferred by the council, appointed three extra or special policemen who have served continuously since that date. The ordinance or resolution purporting to confer this authority upon the mayor recited that additional duties would be imposed upon the police force on account of increase in traffic and ordinances regulating same, and that the force as it was constituted was not sufficient to care for school children at various points.

If such authority may be conferred upon the mayor, it is under section 3297, Kentucky Statutes, which was a part of an act of 1893. Whether this section was repealed by the Act of March 25, 1926, which is a general law relating to police and fire departments of cities of the third class and which includes section 3351a-2 of the Statutes, we need not, for the purpose of this appeal determine. Some cases subsequent to the act of 1926 have seemingly proceeded on the idea that it did not; however, that particular question was not raised.

Section 3297 conferred authority upon the mayor in cases of emergency to appoint special policemen in addition to the regular force but not for a longer period, at one time, than three days, unless especially au-

thorized by the council. This power to appoint special policemen, as will be seen, could only be exercised in cases of emergency. "An emergency is * * * 'any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition.' " Samuels v. City of Clinton, 184 Ky. 97, 211 S. W. 567, 570, quoting 15 Cyc. 542. To the same effect, see City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79; Frank v. Board of Education, 90 N. J. Law, 273, 100 A. 211, L. R. A. 1917 D, 206; Seaboard Air-Line Ry. v. McMichael, 143 Ga. 689, 85 S. E. 891; City of Atlanta v. Scott, 153 Ga. 1, 111 S. E. 426; People ex rel. Rayland Realty Co. v. Fagan, 194 App. Div. 185, 186 N. Y. S. 23. Existing and continuing conditions are never considered emergencies. Schools were in session in January, 1930, as well as in March of that year, and the same children had to attend the same schools by passing over and along the same streets. There was likewise automobile traffic in January, 1930, as well as in March of that year, so that conditions were not sudden, unexpected, or unforeseen. So far as the record discloses, the city could not be properly policed by the reduced force and there was no apparent cause or reason for the removal of appellant except to make place for others. While courts are reluctant to interfere in the affairs of administrative boards, they should not and will not refuse to act where it is apparent there has been such a violation of the spirit and letter of the statute as would virtually result in its nullification. The conclusion is that the act complained of was an attempt to evade the spirit and purpose of the statute, and as said in City of Middlesboro v. Gibson, 225 Ky. 120, 7 S. W. (2d) 825, 826, "to hold their action valid would be to nullify the 1926 act [section 3351a-2] and permit an evasion of its plain provisions."

In the circumstances, we are constrained to hold that the chancellor erred in denying appellant the relief sought and dismissing his petition. Wherefore the judgment is reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.