508

**CITY OF GALVESTON et al. v.**
**WINSLOW et al.**
No. 12064.

Court of Civil Appeals of Texas. Galveston.
Feb. 24, 1949.

Rehearing Denied March 17, 1949.

Edward W. Watson, City Atty., and Williams & Thornton, all of Galveston, for appellants.

Louis J. Dibrell, William E. Stone, Jas. H. Phipps, and Walter E. Ressel, all of Galveston, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellees, A. E. Winslow and some 59 other plaintiffs for the recovery, from the City of Galveston and the Board of Trustees of the Galveston Wharves, of compensation claimed to be due them for services alleged to have been rendered by them as members of the police department of the City of Galveston.

They alleged that during the period from April 30, 1943, to April 1, 1946, they were employed by the Board of Trustees of the Galveston Wharves and that, as such employees, they had been appointed police officers of the City of Galveston by its governing body under the authority of Galveston Ordinance No. 107, and that by reason of such employment and appointment, they were subject to the rules and regulations and ordinances of the police department of the City of Galveston and laws of the state of Texas relating to the management and control of its police officers and their hours of service and rates of pay. They alleged that during the two years next preceding the filing of this suit they had been required by the Board of Trustees of the Galveston Wharves, which was an agency of the City of Galveston, to work in their capacity as police officers of the city 7 days in each week and that they had worked a total of 70 days during that period of time for which they had received no pay. Each appellee sought recovery of the sum of $605 as reasonable compensation for the 70 days for which they had not been paid, and the sum of $160.00 in additional salaries which they claim to be entitled to under the provisions of Article 1583 of the Penal Code of the State of Texas, Vernon's Ann.P.C. art. 1583.

By trial amendment appellees alleged that appellants were estopped from denying in this action that appellees were members of the Police Department of the City of Galveston by the judgment and defenses relied upon by appellants in the case of National Council of Railway Patrolmen's Union v. Sealy et al., Trustees of Galveston Wharves, D. C., 56 F.Supp. 720, and affirmed by the Circuit Court of Appeals, 5 Cir., 152 F.2d 500.

In a trial before the court without a jury, judgment was rendered that appellees were entitled to the remuneration provided under Article 1583 of the Penal Code of the State of Texas aggregating the sum of $29,054.30, and that they had not been paid for the services alleged to have been rendered by them.

No findings of fact or conclusions of law were requested by the parties or filed by the trial court.

Under their points of appeal, appellants assign error in the action of the trial court in holding in the judgment rendered that appellees were members of the police department of the City of Galveston, and that they were entitled to compensation rendered as such police officers under the provisions of said Article 1583 of the Penal Code. They contend that the judgment rendered in the United States District Court in the case of National Council of Railway Patrolmen's Union v. Sealy et al., supra, comprising the Board of Trustees of The Galveston Wharves was not res judicata of the status of appellees in this suit and that it does not establish by res judicata that appellees have the statutory right to recovery.

The material facts in the record are undisputed. The evidence adduced consists principally of stipulations by the parties supplemented by exhibits.

The applicable provisions of Article 1583 of the Penal Code of the State of Texas read:

"1. No member of any fire department or police department in any city of more than twenty-five thousand (25,000) inhabitants shall be required to be on duty more than six (6) days in any one week. * * *

"6. It shall be unlawful for any city of more than sixty thousand (60,000) inhabitants to require or permit any such fireman and policeman to work more than twelve (12) hours per calendar day or more than seventy-two (72) hours in any one calendar week and, in no event, more than one hundred and forty-four (144) hours in any two (2) consecutive calendar weeks in the discharge of their duties except in case of emergency which may arise where it may become necessary to work more than twelve (12) hours per calendar day or more than seventy-two (72) hours in any one calendar week or more than one hundred and forty-four (144) hours in any two (2) consecutive calendar weeks for the protection of property or human life; said fireman and policeman shall draw additional compensation for the number of hours worked in addition to the regular twelve-hour calendar day, or more than the regular seventy-two (72) hours in any one calendar week or more than the regular one hundred and forty-four (144) hours in any two (2) consecutive calendar weeks or if required to work on any day which has been designated as the day of the week that such member of said department should not be required to be on duty, additional compensation at the rate of time and one-half overtime computed upon the basis of their monthly salary shall be paid to them for such additional time as they are required to work.

"7. It is further provided that in any city of more than sixty thousand (60,000) inhabitants each member of any such department shall receive a sum of One Hundred and Fifty Dollars ($150) per month as a minimum wage for said services so rendered."

The pertinent parts of Ordinance No. 107, under the provisions of which appellees are alleged to have been constituted policemen of the City of Galveston, was adopted October 7, 1920.

Section 1 of said article provides that the Board of Commissioners of the City of Galveston shall appoint special policemen or watchmen at private places of business and institutions for duty in and at such places of business and institutions, upon the request, and upon the recommendation of the owners, or proprietors of such places of business and institutions, and the police and fire commissioner of the City, and that said special policemen or watchmen, while on duty in and at such places of business and institutions, shall have the power and authority of a regular police officer of the City of Galveston, and that they shall see that the ordinances of the City are complied with and that when they are not on duty in and at such places of busi-

ness and institutions, for which they are appointed, their powers as such officers shall cease.

Section 2 of said Article 107 provides that any person, firm or corporation desiring a special policeman or watchman, at or in his place of business and institution, shall cause the person desired to be appointed to make a written application to the police and fire commissioner containing substantially the same information and facts required to be contained in an application of persons desiring to be appointed regular police officers of the City of Galveston, and that said application shall be endorsed and recommended by the person, firm, or corporation desiring such appointment, and shall state in and at what place of business and institution such a policeman or watchman is to serve, giving the boundaries thereof, if outside of the building, which application and recommendation shall be presented to the Board of Commission—by the Police and Fire Commissioner with his recommendation, and that the Board of Commissioners shall, upon receiving such recommendations, act thereon, and if the Board of Commissioners shall act favorably upon such request and recommendations and appoint such special policeman or watchman, such special policeman or watchman shall qualify by giving bond and taking the oath of office required to be given by the Charter and the ordinances of the City by regular police officers, and that thereafter, they shall have the power and authority of a regular police officer of the City of Galveston, only in and at such places of business and institution named and within the bounds named in his recommendation and endorsement, and while he is actively engaged in the discharge of the duties of special policeman or watchman, at and in such place of business and institution and within the boundaries named in said recommendation, but in no other place, and such special policeman or watchman shall have no authority and they shall not be permitted to carry arms while not on duty in and at such places of business and institutions.

Section 3 provides that such special policeman or watchman shall receive no sal- ary from the City of Galveston, but that he shall be paid by the person, firm or corporation requesting his appointment, and that he shall be subject to removal from office by the Board of Commissioners of the City of Galveston at any time, and for any cause which they may deem sufficient for his removal.

Section 4 provides that, while such special policemen or watchmen are on duty in and at such places of business and institutions, they shall be subject to the rules and regulations of the police department of the City of Galveston and all ordinances of the City of Galveston relating to the management and control of such department.

It is undisputed that the City of Galveston has, at all times pertinent to this appeal, been a Home Rule City of the state of Texas having a Special Charter and that, during the period from April 30, 1943, to April 1, 1946, it had a population of more than 60,000 inhabitants according to the Federal Census of 1940.

Prior to November 20, 1940, the city of Galveston and the Galveston Wharf Company, a private corporation, were the joint owners of wharf and terminal facilities fronting on the channel of Galveston Bay in the City of Galveston, in which the City owned an undivided one-third interest and the Wharf Company owned the other two-thirds undivided interest. Under agreements between the City and the Wharf Company, the Wharf properties were operated and controlled by the Wharf Company until the City acquired the Wharf Company's interest in the properties in November of 1940.

Prior to that sale, the Galveston Wharf Company employed and maintained a force of watchmen sometimes called the "Wharf Police Force" whose duties were the policing and safeguarding Wharf properties and the commodities and cargoes passing over and stored thereon. The hours and tours of duty, salaries and ranks on the force were fixed and determined by the Galveston Wharf Company who paid their salaries without participation on the part of the City of Galveston. It was the prac-

tice of that company to make written application to the Board of Commissioners of the City of Galveston through one of its officers, requesting the appointment of a watchmen force for the company and it had been customary for the Board of Commissioners of the City, upon motion of the Police and Fire Commissioner, to grant the application and make the appointment.

The property known as the Galveston Wharves comprises a substantial area in the City of Galveston in which there has been concentrated large amounts of valuable goods, wares and merchandise, the buildings in which they are stored and warehoused, railroad trackage, rolling stock and other equipment necessary for its handling and the floating equipment necessary to move the goods and merchandise in water-borne commerce. These physical properties, except the goods in storage and the floating equipment, either belonged to the City of Galveston or were within its protective custody. The task of protecting and safeguarding these properties was assigned to the custody of appellees, by the City of Galveston. They wore badges and uniforms, bore firearms, walked regularly assigned beats, enforced all laws and ordinances that any other police officer of the City of Galveston did on his regularly assigned beat, and were required to give the same bond and to take the same oath as police officers of the City of Galveston and in the ordinance under which they received their commissions it was provided "said special policemen while on duty in and at such places of business and institutions shall have the power and authority of a regular police officer of the City of Galveston and they shall see that the ordinances of the City are complied with", and that they "shall be subject to removal from office by the Board of Commissioners of the City of Galveston at any time, and for any cause which it may deem sufficient for his removal" and that while on duty "they shall be subject to the rules and regulations of the Police Department of the City of Galveston and all ordinances of the City of Galveston relating to the management and control of such department".

It was stipulated by the parties that the services performed by appellees consisted of patroling and policing the properties of the Galveston Wharves and watching and safeguarding the goods, wares and merchandise and other properties and equipment thereon and passing thereover. Appellees were carried on payrolls of the Trustees of the Galveston Wharves as a "Galveston Wharves Police Department" with the particular members designated as "patrolmen."

It is a well established rule of law in this state that, when no findings of fact have been requested or filed an appellate court must assume that the trial court correctly found all fact issues having support in the evidence in favor of the judgment rendered. Texas Rules of Civil Procedure, rules 296, 298, 299; Baker v. Elliott, Tex. Civ.App., 198 S.W.2d 152; Bostwick v. Bucklin, Tex.Civ.App., 190 S.W.2d 814, affirmed by the Supreme Court in 144 Tex. 375, 190 S.W.2d 818.

It is also the established law in this state that in non-jury cases, the trial court's judgment must be affirmed if there is proper evidence in the record to support the judgment rendered on any theory. Gray v. Luther, Tex.Civ.App., 195 S.W.2d 434; Gulf Coast Chemical Company v. Hopkins, Tex.Civ.App., 145 S.W.2d 928; 3 Tex.Jur. page 1060.

While other assignments are ably presented by appellants in their brief, as we view the record, the finding of the trial court in his judgment on what we deem to be ample evidence that appellees were members of the police department of the City of Galveston and that they were entitled to the remuneration provided by Article 1583 of the Penal Code of the State of Texas, renders the remaining assignments immaterial and requires that the judgment of the trial court be in all things affirmed.

Affirmed.