**CITY OF WICHITA FALLS et al.,**
**Appellants,**

**v.**

**Kathleen COX et al., Appellees.**

**No. 15810.**

Court of Civil Appeals of Texas.

Fort Worth.

March 8, 1957.

Rehearing Denied April 5, 1957.

Theodora W. Lueders and J. Walter Friberg, Wichita Falls, for appellants.

B. E. Richie and Sam B. Spence, Wichita Falls, for appellees.

MASSEY, Chief Justice.

From a judgment in favor of plaintiffs, all employees of the City of Wichita Falls, Texas, who sought to recover the difference between the compensation for personal services paid to them by said City and that which should have been paid to them under the provisions of the Firemen's and Policemen's Civil Service Act, Vernon's Ann.Civ.St. art. 1269m and under prior procedure of said City pursuant to the provisions of Vernon's Ann.P.C. art. 1583–2, relating to minimum compensation to be paid to "members" of its Police Department,—the defendants appeal.

Judgment affirmed.

Plaintiffs in the court below filed individual suits, which suits were consolidated on motion of their attorneys, and tried in one proceeding. These plaintiffs are appellees on the appeal and will be so denominated in the opinion. The defendants as to each suit were the City of Wichita Falls (a city with a population of 68,042 according to the last preceding Federal census), its Mayor and City Councilmen, its City Manager, its Chief of Police, and the Director and members of its Firemen's and Policemen's Civil Service Commission. In the opinion they will be denominated appellants.

Pursuant to the provisions of V.A.P.C., art. 1583–2, an election was held in the City of Wichita Falls and the minimum wage of $275 per month established as the minimum wage to be paid to "members" of its Police Department. The effective date of such a wage was over two years antecedent to the date the suits with which we are concerned were filed. At time of the effective date the appellees may, for the purposes of the opinion, be treated as having been employed in the Police Department of said City primarily and near-exclusively performing duties incident to

the operation of the Department. They were being paid salaries as employees of the City's Police Department. These salaries were below the minimum wage provided pursuant to the above election. After the effective date upon which the minimum wage was to become effective appellees continued to work, but their salaries were not brought up to a figure equal to the minimum wage. They continued to work, drawing the lower salary, and finally filed suits for the unpaid "back pay", all at about the same time.

Immediately before the suits were filed they made application for classification under Civil Service as Policewomen before the City Council. The City Council refused such classification. The appellees then requested such classification from the Civil Service Commission. The Civil Service Commission "refused to take jurisdiction in the matter without prejudice to the rights of applicants (appellees here)." The minutes of such meeting stated the "purpose was to have these employees classified as Policewomen, and having their wages set in accordance with the law governing the minimum wage of policemen."

It should be remembered that appellees were all employees working as before in the Police Department of the City of Wichita Falls. They continued to work. Apparently, the only material change made after the controversy arose was by the City of Wichita Falls in removing appellees from that part of the annual budget apportioned for operation of its Police Department, and placing them under the budget for other departments. In other words, change was made whereby, according to records, they were paid as employees of departments other than the Police Department. They were excluded from the communications division, and were relieved of the duties of searching female prisoners.

After the suits were filed, but before trial, the City Manager addressed a letter to the Chief of Police, to be communicated by him to employees, including appellees, which included the instruction, as follows: "You are also advised that you will not under any consideration let any of these female employees engage in any type or character of police work, either now or in the future unless they are recognized by our Personnel Office as Civil Service Employees." Under directions of the letter the appellees were delivered copies thereof. Other sections of the letter made it plain that it was the position of the City that none of the appellees were considered by it to be an employee under Civil Service, or to have any status as such, that under the City's budget they would not be paid as Civil Service employees, and that the "choice of whether or not they will continue in our employ will then be theirs, as under the Charter it is the prerogative of the City Manager to transfer any person who is not under Civil Service from one department to another."

The appellees did not resign, but continued to work after the instructions contained in the letter were communicated to them, receiving and accepting their salary checks without individual or formal protest.

Such was the condition of affairs when the suit came on to be heard by the court without intervention of a jury.

On the trial it was made apparent that the appellants considered the legislation governing the case, as applied to the appellees in any event, to be inapplicable, if not unwise, and considered in like manner the expression of the electorate of the City in the vote which established the minimum wage for "members" of the Police Department at $275. Appellants strenuously resisted the claims of appellees in the court below, advancing all the defenses they believed available, preserved such defenses for purposes of the appeal and have presented them to us in their points of error briefed.

The major portion of appellants' points can be resolved by a few statements, as follows:

■ Appellees were "members" of the Police Department of the City within the contemplation of the Firemen's and Policemen's Civil Service Act, Vernon's Ann. T.S., Art. 1269m, said department being singular in character and made up of officers and employees, whose services, though diversified, were for the sole purpose of accomplishing a distinct governmental function, and the compensation payable for which was accordingly to be made. Hurley v. Sykes, Cal.Dist.Ct.App., 1924, 69 Cal.App. 310, 231 P. 748; Fickett v. Boston Firemen's Relief Fund, Mass. Sup.Jud.Ct., 1915, 220 Mass. 319, 107 N.E. 957; City of Galveston v. Winslow, Tex. Civ.App., Galveston, 1949, 218 S.W.2d 508, writ ref., n. r. e.; City of San Antonio v. Hahn, Tex.Civ.App., Austin 1954, 274 S.W. 2d 162, writ ref., n. r. e. Furthermore, they were "members" because they were paid for their services as employees on the Police Department pay roll under the City's budget. Whitley v. City of San Angelo, Tex.Civ.App., Austin, 1956, 292 S.W.2d 857.

■ V.A.P.C. art. 1583–2 is in accord with the Constitution of Texas and is constitutional. City of San Antonio v. Baird, Tex.Civ.App., San Antonio, 1948, 209 S.W. 2d 224, error refused; McGuire v. City of Dallas, 1943, 141 Tex. 170, 170 S.W.2d 722; Dry v. Davidson, Tex.Civ.App., Galveston, 1938, 115 S.W.2d 689, error refused.

■ V.A.T.S. art. 1269m, and the sections thereunder attacked by appellants are constitutional. Fire Department of City of Fort Worth v. City of Fort Worth, 1949, 147 Tex. 505, 217 S.W.2d 664; Austin Fire & Police Departments v. City of Austin, 1950, 149 Tex. 101, 228 S.W.2d 845. The Constitution of Texas, Art. 3, sec. 53, Vernon's Ann.St. does not inhibit the award to appellees of the "back pay" to

which they were entitled but not paid (the difference between what was paid and the $275 minimum established by election pursuant to provisions of V.A.P.C. art. 1583–2), since appellees were entitled to be paid the "back pay" at the time they performed services for which it was payable. City of San Antonio v. Hahn, supra.

■ Under the circumstances of the case, the fact that appellees continued to work after notice from the City Manager of Wichita Falls (after suit was filed but before trial) that their further employment must be considered as under classifications falling under departments other than the Police Department would not constitute a "waiver" of right to claim the "back pay" for which suit was initially instituted, nor, since the character of work and service performed by appellees did not change, of right to claim "back pay" accumulated thereafter up to the time of the trial. City of San Antonio v. Castillo, Tex.Civ.App., San Antonio, 1956, 293 S.W.2d 691, writ ref., n. r. e.; Whitley v. City of San Angelo, supra. Furthermore, since appellants failed to follow the provisions of statute relative to discharge, such was unlawful under the circumstances of this case, and they would be entitled only to credit amounts thereafter paid to appellees against what they were due to be paid as "members" of the Police Department. City of San Antonio v. Wiley, Tex.Civ.App., San Antonio, 1952, 252 S.W.2d 471, writ ref., n. r. e.

■ For the same reasons appellants' claim of estoppel because appellees accepted compensation for services performed under classification as employees of departments other than the Police Department would have no merit.

■ The trial court had jurisdiction of appellees' causes of action, the Civil Service Commission having constructively denied their applications to be classified administratively as "members", and as such entitled to receive their "back pay". Un-

der the circumstances the question relates to status, i. e., appellees' rights to be recognized as Civil Service Employees, not to question the Act contemplates such a Commission shall pass upon after such status is established. In view of the Commission's constructive denial in law, following their previous efforts, appellees had exhausted every avenue of relief open to them other than through the courts and they properly invoked the trial court's jurisdiction. City of San Antonio v. Castillo, supra.

█ We decline to pass upon the constitutionality of what appellants claim V.-A.T.S. art. 1269m, purports to do, asserted as authorizing a classification under Civil Service retroactively. If the Act does purport to do so such would not be material to a decision in the case before us, for appellees would be entitled to the "back pay" sued for regardless of classification as employees in the Police Department of the City of Wichita Falls.

█ The court below did not err in consolidating for trial the several suits filed for all of them involved a common question of law determinative of the judgment to be entered as to each individual appellee, and therefore consolidation was a matter of discretion on the part of the court. Texas Rules of Civil Procedure 174.

During the course of the trial the appellees' attorney decided it would be well to allege that the notice given to appellees by the City Manager of the City of Wichita Falls to the effect that they were given the choice of accepting classification under departments other than the Police Department as a condition of further employment by the City amounted to unlawful discharge. Appellants objected to the court's reception of the trial amendment by which this was alleged and claimed that it set up a new cause of action wherefore a mistrial had occurred. The objection and motion being overruled, appellants filed

their own pleading at a later time, denominating the same as their trial amendment and cross-action. This pleading attacked the jurisdiction of the trial court (upon which we have already passed) and sought judgment declaratory of appellants' rights, duties and obligations under the Civil Service Act, of the rights of the City of Wichita Falls to determine the classifications of employees in its Police Department, of the present and future status of appellees under the existing budget and ordinances of said City, etc. The pleading appears in the record, so we assume that the trial court granted appellants permission to file the same, but evidence which was not related to questions other than upon the pleadings as they stood prior to the time the pleading was filed was excluded by the trial court. There is no bill of exceptions because thereof included in the transcript and the record does not show that appellants were prohibited from taking a proper bill. The appellants contend that since the judgment does not dispose of issues in the case presented by their cross-action, it is incomplete and that the judgment as rendered cannot stand and must be reversed and the cause remanded for a final adjudication.

█ The appellants do not cite any authority for their position taken in connection with matters contained in the foregoing paragraph (embracing two of their points on appeal). We do not believe that either point presented has merit. Under the wide discretion granted trial courts the trial amendment of the appellees was properly admitted, and certainly appellants were not surprised by allegations of fact therein since they related to actions by the City proven by appellants themselves, in view of which proof appellees filed the trial amendment. Relief sought thereby was not an extension of that already sought by the pleadings. Appellants were not prejudiced and cannot complain of the admission of the trial amendment. Appellants' cross-action is essentially a suit for declaratory relief and the trial court

was vested with discretion to refuse to enter any decree thereon where such decree, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding. In light of appellants' pleadings, taken into consideration in connection with all the other pleadings in the case and the evidence which was introduced, we perceive no abuse of discretion on the part of the trial court. Its actions would not call for reversal or alteration of the judgment which was entered. 4 Tex.Jur.Ten Yr.Supp., p. 128, "Declaratory Relief", sec. 12, "Discretion of Court".

The judgment is affirmed.