CITY OF SAN ANTONIO et al., Appellants,

v.

Virginia HANDLEY, a Feme Sole, et al., Appellees.

CITY OF SAN ANTONIO, Appellant,

v.

Bertha R. JONES, a Feme Sole, et al., Appellees.

Nos. 13244, 13268.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 2, 1957.

Rehearing Denied Dec. 18, 1957.

Carlos C. Cadena, City Atty., A. W. Worthy, Jr., Asst. City Atty., San Antonio, for appellants.

Adrian A. Spears, Franklin S. Spears, San Antonio, for appellees.

POPE, Justice.

City of San Antonio appealed from two summary judgments, here consolidated, which held that fifty-one plaintiffs, as employees in the Police Department, were members of the Firemen's and Policemen's Civil Service System and that all of them were entitled to receive the benefits of a minimum pay ordinance which covered the peace officers in the department. The City urges that the employees are not entitled to a classification in the Civil Service System. However, if they are so classified, the City then urges that they are classified at the jobs they perform and should receive the minimum pay fixed by statute instead of the minimum pay fixed by ordinance for persons in other and different classifications.

City again challenges the unanimous interpretation of the Courts concerning those covered by Article 1269m, Vernon's Ann.Civ.Stats. City has urged this point four times previously, three times before this Court, and once before the Austin Court of Civil Appeals. Similar points have been twice urged by other cities of Texas. The answer has always been the same, because the Legislature defined its own terms and itself construed the Act. When we read beyond the word "Policemen" used in the title of the Act, we learn that the Legislature expressly stated that the Act applies to "members" of the Police Department. Section 2, Article 1269m. Reading further, we see in Section 12, that the Act expressly applies to "offices and positions," "officers and employees." These reading assignments were mentioned in City of San Antonio v. Wiley, Tex.Civ. App., 252 S.W.2d 471, a case termed "monstrous" by the City. The Act, by its terms, applies to "employees" as well as peace officers; and this is because the Legislature said so. A growing number of precedents point to these words which the City cannot see. Firemen's and Policemen's Civil Service Commission of City of San Antonio v. Wells, Tex.Civ.App., 300 S.W.2d 676; City of Wichita Falls v. Cox, Tex.Civ.App., 300 S.W.2d 317; City of San Antonio v. Castillo, Tex.Civ.App., 293 S.W.2d 691; Whitley v. City of San Angelo, Tex.Civ.App., 292 S.W.2d 857; City of San Antonio v. Hahn, Tex.Civ. App., 274 S.W.2d 162; City of San Antonio v. Wiley, supra.

■ City again asks that this Court read out of the Act the definition of terms the Legislature gave in the Act itself, because that definition is shocking to City's idea of what a policeman is. It may be no less shocking to this and other Courts, but the City no less than this Court must follow the definition which includes the terms, "member of the Police Department," "offices and positions," "officers and employees." Hence, appellees, though they were matrons, mechanics, clerical workers, switch-board operators and porters, are covered by the Act.

■ City claims that these employees lost their Civil Service status by reason of a reorganization plan during 1952 and 1953. Twelve employees were transferred in 1952 from the Police Department to the Public Works Department. The rest of the employees in this suit were transferred in 1953 from the Police Department to the Personnel Department. City concedes that prior to the transfers these persons were members of the Police Department, with Civil Service status. The transfers in no way changed the nature, place, or terms of employment; and the employees continued their work under the direct "day to day supervision" of the Police Department. City reasons that these employees were administratively moved out of Civil Service status and that they should not be restored by what it terms "court action." We suggest that both city action and court action are subject to the "Legislative action." Neither City nor this Court is a free agent to rewrite a law of the Legislature. Courts read statutes; they do not write them. If the City action is permitted by the Civil Service Act, this Court cannot interfere; if that action is not permitted by the Act, this Court will interfere and and declare the law under the Act.

■ Employees under the Act are entitled to certain protective measures. Illustrative of the statutory grant of those benefits is Section 16, which relates to indefinite suspensions. The employee is entitled to written notice which specifies the reasons for suspension, and a hearing within thirty days before the Commission. Other benefits are granted employees concerning demotions, disciplinary suspensions, the abolition of positions, and military leaves of absence. Secs. 19, 20, 21, 22a, art. 1269m, Vernon's Ann.Civ.Stats. If, as City urges, it may first administratively transfer an employee with Civil Service status to some other unprotected department and then discharge him, or otherwise deprive him of Civil Service

benefits, the whole Act is meaningless. Sec. 16a declares the purpose of the Civil Service Law is to secure efficient Police Departments, "free from political influence," "and with permanent tenure of employment as public servants." Members of Civil Service Boards are directed to administer the law in accord with that purpose. If we give effect to the construction urged by the City, the declared objectives of the Civil Service Act are wholly destroyed. The Act would become meaningless as to all employees by the simple expedient of an administrative transfer. We shall give effect to the Legislative intent, as did the trial court. 3 Sutherland, Statutory Construction, § 5804. In City of Wichita Falls v. Cox, Tex.Civ. App., 300 S.W.2d 317, the City transferred members of the Police Department to other departments which paid them, but that fact did not destroy Civil Service rights which had already accrued to the employees. In City of San Antonio v. Hahn, Tex.Civ. App., 274 S.W.2d 162, the order of the Court was that plaintiffs should be "reinstated" in the Police Department, since their rights under Civil Service had accrued and they were entitled to those rights.

██ City further claims that these employees lost their Civil Service status on August 22, 1957, after trial and while the case was pending in this Court, since House Bill 79, c. 391, Fifty-fifth Legislature amended Sections 2 and 12 in such a way as to eliminate these employees from a classification as policemen. The law was prospective and not retroactive in purpose, as appears from the Title. 3 Sutherland, Statutory Construction, § 4802.

The Title to the Act declares that its purpose is to redefine "Firemen" and "Policemen" and to amend Section 12 "by stopping the creation in the futures of new classified positions unless established by ordinance * * *." The intent is to operate in the future and with reference to persons whose Civil Service rights have not been previously fixed.

The other important point in the case is whether the fifty-one employees are entitled to pay as patrolmen under San Antonio City Ordinances or merely to a guaranteed minimum pay as fixed by Article 1583–2, Vernon's Ann.P.C. The point arose in this manner: City has passed a series of ordinances fixing the base salaries of the peace officers in the Police Department. The ordinances classified and fixed the base salary of the Chief of Police, inspectors, captains, lieutenants, sergeants, detectives, superintendents of vehicle maintenance, and patrolmen. Patrolmen, under the various ordinances, received the least pay, ranging from $300 in an ordinance enacted in 1954, to $340, in 1957. The ordinances do not purport to classify or fix salaries for persons employed in other capacities. Employees argue that the ordinances, in failing to include them, in law did include them at a salary not below that of the patrolmen. The trial court approved this reasoning. The solution to this issue is again found in the words of the Civil Service Act:

"Sec. 12. * * * All positions in the Fire Department, except that of Chief or head of the Department, and in the Police Department, except that of Chief or head of that Department, shall be classified by the Commission and the positions filled from the eligibility lists as provided herein.

"All offices and positions in the Fire Department or Police Department shall be established by ordinance of the City Council or governing body, provided, however, if the officer or employee shall have been permitted to serve the six (6) months probationary period, the service of said officer or employee shall ipso facto constitute the creation of the said position or office under a civil service classification."

"Sec. 14. * * * G. In the event any new classification is established either by name or by increase of salary,

the same shall be filled by competitive examination in accordance with this law."

"Sec. 24. Firemen or Policemen in the actual service of each city affected hereby, at the time of the final passage of this Act, and entitled to civil service classification, shall enjoy the status of civil service employees without having to take any competitive examinations for the position occupied at the time, provided such Firemen and Policemen have been in the service of said city for more than six (6) months."

The Act reflects that an employee may ipso facto and automatically be classified by six months service, and that he is classified in "said position." Those employed as long as six months at the time the Act became effective, without having to take an examination, were classified "for the position occupied at the time." Classifications may be by name or by salary. Sec. 14, subd. G, art 1269m.

■ The ordinances which classified peace officers were never intended, either expressly or by inference from their language, to classify all employees within the entire department. The City classified some and failed to classify other positions, including those of employees in this action. When the City failed to classify, the Act itself classified the other persons in the department, but it classified them in the positions they occupied and at the salaries they drew, but not otherwise. When the ordinances did not classify one of the employees, that employee still had the protection of the Act concerning the position he occupied, but not some other position. The ordinance did not purport to classify any positions or jobs other than those designated.

Article 1583–2 of the Penal Code fixes the minimum salary for members of the Police Department at $220 plus longevity, and employees were entitled to receive that minimum amount. Neither Article 1269m, Vernon's Ann.Civ.Stats., nor art. 1583–2,

P.C., nor the ordinance, contains language which indicates an intent to pay any employee at any rate other than the job in which he was classified. In Whitley v. City of San Angelo, Tex.Civ.App., 292 S.W.2d 857, several night watchmen had served for more than six months and were then discharged. The Court, on the authority of Sections 12 and 24, of the Act, held that the position of night watchman was ipso facto created if the night watchman served six months before the Act was adopted, or if he served for six months before he was discharged.

Employees reason that former decisions have settled this point in their favor. Our examination of the cases shows that this is the first case in which an issue, free from an agreement about the amount of minimum wages, has been made. In the Hahn case, the City stipulated that employees would draw pay of patrolmen if the Court held they were policemen under the Act. In the Castillo case, there was no issue and no mention of the amount of pay. The Cox case shows that there was a minimum salary fixed by the City for all "members" of the Police Department. These cases differ from the present one wherein we have no agreement of the base pay which the plaintiffs should receive if they are covered by the Act, and the proof only shows that they were classified in the jobs they held when they were ipso facto classified. The employees were thus classified out of the status of patrolmen and into the status of the jobs they were performing. A classified porter is not a classified patrolman. A base pay for the patrolman is not a base pay for a porter.

We affirm that part of the judgment which held that all the employees were entitled to Civil Service classification. We reform that part of the judgment which fixed the base pay at the rate drawn by patrolmen, and fix the minimun pay at the rate fixed by Article 1583–2, Vernon's Ann. P.C. The appeal of Blanch Bailey was previously dismissed. Costs are divided between City and the employees.

### On Motions for Rehearing.

 City, by its motion for rehearing, invites our attention to the fact that ten of the appellees were transferred into the Department of Public Works in 1952. They are, appellees Ward, Moore, Tease, Casey, Clack, Davis, Granieri, Hopkins, Janert, and Blas Rodriguez. City argues that the transfer was a bona fide reorganization and not a paper transfer, and that those employees were placed under the direction and supervision of the Director of Public Works. City argues that those appellees delayed their action seeking reinstatement as policemen for four years and that a fact issue concerning laches is present as to them. No new or different employees were hired by the City because of the reorganization and the work of the ten appellees continued the same as it did before. The situation is similar to that presented in City of San Antonio v. Castillo, Tex.Civ.App., 293 S.W.2d 691, 695. In our opinion, however, laches was not raised by the pleadings. Five different suits were consolidated in the trial court. The pleadings and answer which concern and relate to these ten employees do not mention an issue of laches. Laches was not in the case. Rule 94, Texas Rules of Civil Procedure; Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167; Perkins v. Martel, Tex.Civ.App., 277 S.W.2d 741.

In the recent case of Firemen's and Policemen's Civil Service Commission of City of San Antonio v. Wells, Tex.Civ.App., 300 S.W.2d 676, the Supreme Court held that one may be a "member of the Police Department" under the Civil Service Act and yet at the same time not qualify as a "duly appointed and enrolled" policeman under the Pension Act. Art. 1269m, Sec. 2, Art. 6243f, Sec. 7(a), Vernon's Ann.Civ. Stats. City urges that by like reason one may be a member of the Police Department under the Civil Service Act and yet not qualify for the benefits of the minimum salary act. Art. 1583–2, Vernon's Penal Code.

The Supreme Court in the Wells case stated that it had refused to grant writs in several Civil Service cases, in at least one of which the same point had been squarely presented. City of San Antonio v. Hahn, Tex.Civ.App., 274 S.W.2d 162, 163, was one of those cases. The opinion of the Court of Civil Appeals isolated and stated two controlling issues, one of which was: "Are such employees entitled to all the benefits of Article 1583, P.C., including all pay raises granted to patrolmen by the City Council?" The Court held that they were entitled to the benefits of that Article, and while the parties agreed upon the amount, there was no agreement that the Article applied. We are convinced that the refusal of the writ in that case, also decided this one.

City of Galveston v. Frederickson, Tex. Civ.App., 174 S.W.2d 994, does not hold to the contrary. That case held that the fire marshal who brought that suit, under the city ordinances, was not a member of the fire department. In that case he was not a member of the department. In this case, these plaintiffs were "members" of the department.

The motions for rehearing for appellees and appellants are overruled.