CITY OF SAN ANTONIO et al., Appellants,

v.

Ernest P. KNEUPPER et al., Appellees.

No. 13499.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 7, 1959.

Rehearing Denied Nov. 18, 1959.

Second Rehearing Denied Dec. 16, 1959.

Carlos C. Cadena, City Atty., Charles L. Smith, Asst. City Atty., San Antonio, for appellants.

Adrian A. Spears, San Antonio, for appellees.

BARROW, Justice.

This is a mandamus suit to compel the appellants, City of San Antonio and the Chief of Police of said City, to reinstate appellees, Ernest P. Kneupper and Atilano S. Castillo, and to restore each to the position, rank, status and class of service in the San Antonio Police Department from which he was suspended, and for the recovery of their back salaries from May 29, 1957. Plaintiffs and defendants each moved for summary judgment in the trial court. The trial court granted plaintiffs' motion and overruled defendants' motion. Judgment was rendered in favor of plaintiffs, and this appeal is from that judgment.

This case involves the right of the City to discharge appellees from their respective positions in the Police Department.

Appellees were both employed by and were employees of the Police Department of the City of San Antonio, and had been for more than six months prior to the enactment of the Firemen's and Policemen's Civil Service Act, and continued in such capacity at least until the matters in dispute arose. Kneupper was employed as maintenance carpenter in the San Antonio Police Department, and Castillo, as a collector of the Parking Meter Division in said Department. The appellants, who will hereinafter be called the City, present several points, but only two main questions: (1) Were employees legally discharged from the Police Department? (2) Are appellees entitled to recover back pay, longevity and sick leave pay at the rate of base pay for patrolmen?

The following facts are undisputed. In 1951 appellees were policemen by virtue of the provisions of 1269m, Vernon's Ann. Civ.Stats. City of San Antonio v. Handley, Tex.Civ.App., 308 S.W.2d 608; City of Wichita Falls v. Cox, Tex.Civ.App., 300 S.W.2d 317; City of San Antonio v. Castillo, Tex.Civ.App., 293 S.W.2d 691; City of San Antonio v. Hahn, Tex.Civ.App., 274 S.W.2d 162; City of San Antonio v. Wiley, Tex.Civ.App., 252 S.W.2d 471.

In 1952, the City attempted under a reorganization plan to remove certain employees, including appellees, from the Police Department and out of the protection of the Civil Service Law. This was held illegal and void in the Handley case, supra. Under this reorganization plan Kneupper's position was transferred to the Public Works Department, and Castillo's, to the Tax Collector's Department.

In 1956, the City contracted the work of collecting from parking meters (Castillo's job) to the Armored Motor Service, Inc. Since 1952, in the face of the provisions of Article 1269m, supra, and the holding of the Court in the above cases, the work of

Maintenance Carpenter and Collector, Parking Meter Division, has been performed by other persons and paid for by the City.

In February, 1957, this Court handed down the opinion in the Castillo case, supra, affirming the judgment of the trial court restoring both appellees to their positions, and giving them judgment for back pay in full, which the City paid up to May 29, 1957.

After the final decision in the case, the Chief of Police assigned appellees to the Cadet Training Program, although, under the plain provisions of Article 1269m, and the decisions of the Courts construing said statute, he has no authority to do so. On May 25, 1957, he filed charges against appellees charging them with alleged cheating on an examination which, under the law, they were not required to take; and also charged them with inability to perform the basic duties of law enforcement officers, which ability they are not, under the law, required to possess in order to fill their respective positions. Appellees appealed these charges to the Civil Service Commission.

On the next day after the Chief of Police filed his charges, the City Council passed Ordinance No. 25,124, which, omitting immaterial portions, is as follows:

"Whereas, by judgments entered on January 31, 1956, the position classifications of Maintenance Carpenter and Collector, Parking Meter Division were directed to be recognized by the City of San Antonio until such time as such position classifications are abolished by the City Council; and

"Whereas, there is no longer a need for such classification in the Police Department of the City; Now, Therefore, Be It Ordained By the City Council of the City of San Antonio:

"1. The position classifications of Maintenance Carpenter and Collector, Parking Meter Division, of the San

Antonio Police Department are abolished."

After several hearings, the Civil Service Commission dismissed the above mentioned charges and ordered appellees restored to their former "position or status." On August 12, 1957, the Chief of Police wrote a letter to each appellee, dismissing him from his position and status. Both letters were in the same language, and the letter to Kneupper reads as follows:

"The Firemen's and Policemen's Civil Service Commission has dismissed charges which I preferred against you, as reflected in my letter to you of May 28, 1957.

"Your position as Maintenance Carpenter no longer exists in the Police Department. The City Council by ordinance abolished the classification of Maintenance Carpenter on May 29, 1957. You are therefore dismissed, effective May 29, 1957. Your pay to May 29, 1957, will be forwarded to you.

"Under Section 21 of Article 1269m, you are entitled to be placed on a reinstatement list for the classification of Maintenance Carpenter. You are herewith notified that you have been placed on such a reinstatement list."

It is admitted that appellees were not placed on any reinstatement list. In fact, it is admitted that no such list exists upon which appellees can be placed. It is also admitted that there exists no seniority list governing the demotion of employees under the provisions of Section 21, Article 1269m.

Neither the judgment of the trial court nor the opinion of the Court of Civil Appeals in the Castillo case contains any such language as that used in Ordinance No. 25,-124, restoring appellees to their positions *"until such time as such position classifications are abolished by the City Council."*

The City now contends, for the first time, that inasmuch as the City Council by ordinance abolished the positions of appellees in the Police Department, the Courts have no power to inquire into the motives and good faith of the City Council, for the reason that in the passage of an ordinance the Council acts in a legislative capacity. We overrule that contention.

No inquiry need be made. The City has only changed its course in its attempt, of long standing, to ignore and evade the plain mandates of the Legislature and the decisions of the Courts, rendered time after time. The City now attempts to do what under the law it cannot do, by the ingenious method of adopting an ordinance.

■ Ordinances which are in conflict with the Constitution or the law of the State are void. 30 Tex.Jur. 301, Municipal Corporations, § 167. Ordinances of a Home Rule City are at all times subject to all constitutional limitations of power in the protection of persons and property. City of Wichita Falls v. Continental Oil Co., 117 Tex. 256, 1 S.W.2d 596.

■ The rule applicable to this case has been stated as follows:

"* * * Although it has been held that inquiry may not be made into the motive in exercising the power, since it is enough that the power exists, *the weight of authority is to the effect that the exercise of the power must be in good faith, * * *.*" 62 C.J.S. Municipal Corporations § 585, p. 1179. (Emphasis supplied.)

"* * * A civil service position may be abolished in good faith, as, for example, where there is no longer a public necessity for its continuance or where its abolition is advisable for purposes of economy. Nevertheless, *good faith in such cases is essential.* The civil service laws cannot be evaded by a sham or pretended abolition, as where the incumbent of an office is ousted, a colorable change made in the title of the office, and another person appointed

to perform substantially the same duties." 10 Am.Jur. 933 § 12. (Emphasis supplied.)

As said by the Supreme Court of Washington in State ex rel. Gilmur v. City of Seattle, 83 Wash. 91, 145 P. 61: "To abolish an office, with the sole purpose of getting rid of the man but not the office, is not an act of good faith, and to permit it would make civil service a farce." This is true where the civil service employee is replaced by an independent contractor as well as by another employee. State Compensation Ins. Fund v. Riley, 9 Cal.2d 126, 69 P.2d 985, 111 A.L.R. 1503. "The method pursued to effect the removal (or discharge of appellees) is not such as commends itself to a court of justice." An employee "who can only be removed for cause, cannot thus be legislated out of office." Silvey v. Boyle, 20 Utah 205, 57 P. 880, 881. This seems to be the universal holding of the Courts. See, Glass v. Board of Common Council of City of Frankfort, 262 Ky. 471, 90 S.W.2d 700; Rexstrew v. City of Huntington Park, 20 Cal.2d 630, 128 P.2d 23; City of Camden v. Civil Service Commission, 118 N.J.L. 501, 193 A. 686; State ex rel. Quintin v. Edwards, 40 Mont. 287, 106 P. 695; Stockburger v. Riley, 21 Cal. App.2d 165, 68 P.2d 741; Turel v. Delaney, 285 N.Y. 16, 32 N.E.2d 774; City of San Antonio v. Hahn, supra; City of San Antonio v. Handley, supra.

It is clear that Ordinance No. 25,124 shows on its face that it was not to abolish the positions, but to get rid of appellees. Moreover, the record clearly shows that there was no attempt to comply with the provisions of Section 21 of Article 1269m, even if it could be said that appellees' positions had been legally abolished. The conclusion is inescapable that they were summarily dismissed without regard to their rights under the Civil Service Law.

The City, by its fifth point, urges that the court erred in ruling that appellees were entitled to receive a salary of $340 per month, plus longevity, from May 29, 1957, to December 31, 1957, and $360 per month, plus longevity, from January 1, 1958 to the date of judgment.

It is not disputed that on the date of their discharge and during said entire period from the date of the discharge in 1957, appellees held the rank and status of Patrolmen, and that during all said time the City had no classification below that of Patrolmen. It is also undisputed that up to May 29, 1957, they were paid the salary provided for in the judgment.

The record before us demonstrates that the City still fails to classify the civilian employees in the Police Department. As said by Justice Pope in the Handley case [308 S.W.2d 612]: "When the City failed to classify, the Act itself classified the other persons (appellees) in the department, but it classified them in the positions they occupied and at the salaries they drew, * * *." When the Civil Service Commission ordered appellees restored to their former position or status, it restored them to the same status which existed at the time of their unlawful discharge, which included the salary bracket they were in. The City did not appeal from that ruling, as provided in Article 1269m. The ruling of the Civil Service Commission is res judicata and binding.

The facts are undisputed and the law is clear. The courts must accept both as they find them.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

We adhere to our original opinion that the action of the City in attempting to abolish the positions of appellees in the Police Department of the City of San Antonio, and supplant them by engaging other persons to perform the same service in the department is illegal and void. However, we have reached the conclusion that we were in error in our holding that the ap-

pellees are entitled to the classification of Patrolmen in the Police Department and entitled to judgment for back salary as such. In our original opinion we proceeded upon the erroneous assumption that the status of appellees as patrolmen was fixed by stipulation in their former suit, City of San Antonio v. Castillo, Tex.Civ. App., 293 S.W.2d 691, as was the case in the case of City of San Antonio v. Hahn, Tex.Civ.App., 274 S.W.2d 162. On the contrary, this record shows that such was not the case, but that Castillo was, at the time of his discharge, May 27, 1957, Collector in the Parking Meter Department and was being paid at the rate of $360 per month plus longevity; and that Kneupper was at such time employed as maintenance carpenter in the Police Department, and was being paid at the rate of $360 per month plus longevity. The record further shows that the City had never classified these employees in the Police Department. Therefore, it is our opinion that they were at such time automatically classified by Article 1269m, Vernon's Ann.Civ.Stats., in the positions they held and at the rate of pay they were drawing. Section 14, art. 1269m, supra. See City of San Antonio v. Handley, Tex.Civ.App., 308 S.W.2d 608.

In City of San Antonio v. Whitten, 330 S.W.2d 210, this Court held that the ordinance of the City of San Antonio attempting to set the salaries of all City employees, except peace officers, at $220 per month, plus longevity, is void. Therefore, the contention of the City that appellees' salaries should be fixed as per that ordinance must be overruled.

That part of our original opinion affirming the judgment ordering the appellees placed in the rank and status of Patrolmen and rendering judgment in their favor for back salaries as patrolmen, is withdrawn and the judgment reformed so that appellee Kneupper be restored to the status and classification of Maintenance Carpenter in the Police Department, and that appellee Castillo be restored to the status and classification of Collector, Parking Meter Department, in the Police Department of the City of San Antonio, and that each of the appellees recover judgment against the City of San Antonio for salary from May 29, 1957.

Reformed and affirmed.